669 A.2d 883

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Mark Allen BURNSWORTH, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1995.

Decided Dec. 27, 1995.

Joseph P. Conti and William R. Cunningham, Erie, John M. Popilock and Robert A. Graci, Attorney General's Office, Harrisburg, for Commonwealth.

Jack E. Grayer, Erie, for Mark Burnsworth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

Appellant, the Commonwealth of Pennsylvania, appeals from a judgment of sentence entered by the Erie County Court of Common Pleas in which the common pleas court sentenced Appellee, Mark Allen Burnsworth, to six to twelve months imprisonment, followed by forty-eight months of probation. In fashioning such a sentence, the common pleas court refused to impose a minimum mandatory sentence as required by our legislature. Instead, the sentencing court declared that the mandatory sentencing provisions of 18 Pa. C.S. § 7508(a)(1)(i), (ii), and (iii), relating to "live plants," were unconstitutional.[1]

---

1. This Court is vested with jurisdiction of this appeal by virtue of 42 Pa.C.S. § 722(7) which provides:

Burnsworth was charged with two counts of unlawful manufacturing of marijuana[2] and two counts of possession with intent to deliver marijuana plants in violation of 35 P.S. § 780–113(a)(30).[3] On May 11, 1994, Burnsworth appeared for trial. Nevertheless, after consultation with his attorney, and after being notified that the Commonwealth would be seeking the application of the mandatory sentencing provisions set forth in 18 Pa.C.S. § 7508(a)(1)(i) and (iii), Burnsworth pled guilty to the offenses. As a specific condition of his plea agreement, Burnsworth retained the right to contest the application of the mandatory sentence provisions, specifically with respect to the number of marijuana plants confiscated.

During the July 8, 1994 sentencing hearing, the Commonwealth presented the testimony of Officer Edward Podpora of the Girard Police Department. Officer Podpora, present when the marijuana plants were confiscated, testified that with respect to Count 2738, sixteen "live" marijuana plants were found at Burnsworth's residence. He stated that the plants were four to five feet high, and that "a majority of them were planted in five gallon pails ... [and that t]here were also a few planted into the ground at the residence." (N.T. 7/8/94 at 11.) Officer Podpora also testified that in regard to Count 2739, he

The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

\* \* \* \* \* \*

(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

2. Count No. 2738 alleged manufacture of sixteen (16) marijuana plants. Count No. 2739 alleged manufacture of sixty-one (61) marijuana plants.

3. This section of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–101—780–144, specifically prohibits:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

was again present when sixty-one marijuana plants were confiscated from a nearby fenced-in area.[4]

At the conclusion of Officer Podpora's testimony, Burnsworth introduced the testimony of Dr. Larry Gauriloff, an assistant professor of biology at Mercyhurst College.[5] Dr. Gauriloff testified that in addition to propagation by seed, marijuana will often germinate by a lateral root system, meaning that lateral shoots come up from the roots. (N.T. 7/8/94 at 29.) The following testimony ensued between defense counsel and Dr. Gauriloff:

Q: Would the collectivity of these lateral roots and stems shooting up from the roots, is that defined as one plant or multiple plants?

A: That would define as a plant arising from a single seed, so you would consider it one plant. Many people counting them, certainly if they were pulled out of the ground, would count them as individual plants.

Q: Is there anything in the literature, in your expertise— would you view this as a plant, a tap system with multiple stems, would you view it as one plant or multiple plants?

A: From a research point of view as a single plant.

(N.T. 7/8/94 at 30.)

Dr. Gauriloff also offered testimony in regard to the weight of the plants at issue in this case:

4. On cross examination, the following discussion occurred between Officer Podpora and defense counsel:
    Q: Okay. These plants were dug up in the dark?
    A: Yes.
    Q: Essentially, you pulled the plants up by their stems; is that correct?
    A: Chief Bucho pulled them out of the ground for me to count at the scene, and we counted them at the station.
    Q: You pulled them out by the stems; is that right?
    A: By the roots, the roots were along with—
    (N.T. 7/8/94 at 18.)

5. The sentencing court permitted Dr. Gauriloff to testify over the Commonwealth's objection. (N.T. 7/8/94 at 28.)

Q: Can you form an opinion based on the collectivity of 61 plants with the description that Officer Podpora gave as to how much wet weight there would be?

A: Total?

Q: Yes.

[At this point, the Commonwealth objected on the basis that the testimony would be speculative. The sentencing court overruled the objection.]

A: Wet weight on 61 plants, like I said, probably 18 inches tall, the whole plant?

Q: Yes.

A: Figure about 4 grams per plant, you're looking at 240 grams roughly, divided by 28 in terms of ounces.

Q: So could you extrapolate that into pounds?

A: Pounds, you're looking at what, maybe 7, 8 ounces; half a pound.

(N.T. 7/8/94 at 34.) The court further inquired whether Dr. Gauriloff had an opinion on the weight of the sixteen plants. Dr. Gauriloff responded: "Probably in terms of total weight I would say—I'll give them six, probably seven grams. Yeah, they are real sparse looking. But probably about six, seven grams of wet weight" which would correspond to about "four ounces, three ounces, three, three and a half." (N.T. 7/8/94 at 35.)

Based upon the evidence presented, the sentencing court declared that the mandatory sentencing provisions of 18 Pa. C.S. § 7508(a)(1) were unconstitutional as

vague and overbroad and fail[ ] to take into account, among other things, the difference in size, maturity and intoxicating productivity of the plants, fail[ ] to define what constitutes a plant in terms of height, sex, percent of intoxicating cannibis, or root system and that there is a great disparity which has been pointed out in court by Dr. Gauriloff in the mandatory sentencing statute in the comparison between the amount of marijuana in pounds and the weight of marijuana in plant form. And this Court finds that such appears to be totally discretionary with no logical reason-

able, or scientific basis for comparison. Therefore, the plant portion of the mandatory sentencing is fundamentally unfair, particularly in comparison with the mandatory sentencing by weight.

(N.T. 7/8/94 at 48–49.) Moreover, the sentencing court determined that no rational basis existed for the disparity between the statute's weight and "live" plant provisions. *Commonwealth v. Burnsworth,* Nos. 2738 of 1993 & 2739 of 1993, slip op. at 1–2 (C.C.P. Erie County, September 15, 1994). The Commonwealth appealed.

■ We begin by noting that when confronted with the interpretation of a statute, we are guided by the principles of the Statutory Construction Act, Act of December 6, 1972, P.L. 1339, No. 290, 1 Pa.C.S. §§ 1901–1991. Moreover, it is well established that all legislation enacted by the General Assembly carries a strong presumption of constitutionality, 1 Pa.C.S. § 1922; *Curtis v. Kline,* 542 Pa. 249 n. 3, 666 A.2d 265 n. 3 (1995); *Commonwealth v. Blystone,* 519 Pa. 450, 463, 549 A.2d 81, 87 (1988), *aff'd,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), and any party challenging a statute's constitutionality bears a heavy burden to demonstrate that the legislation clearly, palpably and plainly violates the terms of the constitution. *Commonwealth v. Bell,* 537 Pa. 558, 569, 645 A.2d 211, 217 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1106, 130 L.Ed.2d 1072 (1995); *Commonwealth v. Nicely,* 536 Pa. 144, 150, 638 A.2d 213, 216 (1994).

■ With that in mind, we shall commence our discussion of this case by addressing the sentencing court's opinion that the term "plant," as used by the legislature in 18 Pa.C.S. § 7508, is unconstitutionally vague and overbroad.

■ It is well settled that when the language of a statute is clear and unambiguous, the statute must be interpreted in accordance with its plain and common usage. *Commonwealth v. Corporan,* 531 Pa. 348, 351, 613 A.2d 530, 531 (1992). Our legislature specifically has provided that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage ...," 1 Pa.C.S.

§ 1903(a), and furthermore, that only technical words are to be construed according to their peculiar meaning. *Id.*

Herein, the legislature adopted the following sentencing requirements:

### § 7508. Drug trafficking sentencing and penalties

**(a) General rule.**—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

(1) A person who is convicted of violating section 13(a)(14), (30) or (37) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, [footnote omitted] where the controlled substance is marijuana shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

(i) when the amount of marijuana involved is a least two pounds, but less than ten pounds, **or at least ten live plants but less than 21 live plants;** one year in prison and a fine of $5,000 . . . ;

(ii) when the amount of marijuana involved is at least ten pounds, but less than 50 pounds, **or at least 21 live plants but less than 51 live plants;** three years in prison and a fine of $15,000 . . . ;

(iii) when the amount of marijuana involved is at least 50 pounds, **or at least 51 live plants;** five years in prison and a fine of $50,000 . . . .

(emphasis supplied).

We believe that this language is clear and unambiguous, and as such, that we should construe the term "plant" according to its common usage. Even Dr. Gauriloff testified that while, from a biological and research point of view, lateral roots and stems could be considered as a single plant, "[m]any people counting them, certainly if they were pulled out of the ground, would count them as individual plants." (N.T. 7/8/94 at 30.) Dr. Gauriloff also stated:

The lateral roots are quite fragile, the main body of the root being underneath each new shoot. As long as they were attached by a lateral root, they would be considered a single

plant, but when torn from the ground, the lateral root would break.

(N.T. 7/8/94 at 30–31.) In fact, he opined that once the "plant" is torn from the earth, the identity of whether it was a single plant or a shoot from one plant's lateral root structure essentially would be indeterminable. (N.T. 7/8/94 at 31.)

While not controlling, we find the opinion of the United States Court of Appeals for the Tenth Circuit in *United States v. Eves*, 932 F.2d 856 (10th Cir.1991), *cert. denied*, 502 U.S. 884, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991), to be instructive. In that case, a very similar argument to the one raised in this case was lodged against a similar federal sentencing statute. From eight parent plants, the defendant grew over 1000 cuttings. The defendant argued that in order to determine if a "plant" was actually a plant, it was necessary to engage in a viability analysis. The Tenth Circuit Court of Appeals disagreed. Instead, the court opined that Congress intended the term "marijuana plant" to

include[ ] those cuttings accompanied by root balls. Whether the plant could survive on its own would not be an issue; if it looks like a "plant"—that is, if it has a reasonable root system—it will be considered a "plant." No expert need testify, no experiment with instrumentation to monitor whether gaseous exchange is occurring need be conducted, no elaborate trimester or viability system need be established. If a cutting has a root ball attached, it will be considered a plant.

*Id.* at 860. Accordingly, the federal appeals court determined that as a matter of statutory interpretation, the word "plant" should be interpreted consistent with its commonplace meaning,[6] and in so ruling, specifically rejected defendant's argument that a more scientific definition should be applied. *Id.* at

6. Judge Aldisert noted the ordinary meaning of the term plant as follows:

The common everyday meaning of "plant" is a living organism which belongs to the vegetable kingdom in the broad sense. cf. [sic] Websters New International Dictionary, 1881, def. n. 3 (2d ed. unabridged 1961).

857. Furthermore, in *United States v. Robinson*, 35 F.3d 442 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1268, 131 L.Ed.2d 146 (1995), the United States Court of Appeals for the Ninth Circuit recognized that an organism should have three readily apparent characteristics in order to be classified as a "plant" pursuant to the ordinary meaning of that word—roots, stems and leaves. *Id.* at 446. As we have already indicated, we agree that such a commonsensical definition of the term "plant" should be applied in this instance.[7]

■ Another precept of statutory construction is that the legislature cannot be presumed to intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1). The legislature originally enacted this particular section in an attempt to curb drug trafficking.[8] By adding language to trigger the terms of the mandatory sentence when the marijuana involved is a specified number of plants, it is clear that the legislature intended to deter the growing of marijuana.[9] To conclude, as Burnsworth would have us do, that one "plant" could produce an indefinite number of shoots

*United States v. Eves*, 932 F.2d 856, 859 (10th Cir.1991) (citing *United States v. Fitol*, 733 F.Supp. 1312 (D.Minn.1990)).

**7.** As further support of this position, we note that the definition of "marijuana" found at 35 P.S. § 780–102, *see infra* note 9, does not require the courts to consider the height, sex, percent of intoxicating cannibis or root system of the plant.

**8.** State Senator Greenleaf noted that

This bill is more about deterrents than punishment because it establishes if you do sell to a minor or if you are a big-time dealer—because the legislation provides that you have to have not a small amount of marijuana but over two pounds and over 2.5 grams before these mandatory sentences come in, and up to fifty pounds of marijuana—that these are people who have these types of drugs in their possession, are people who are not the street seller but the individual who is involved in it for business and the kind of people we all went to get off the street to prevent them from continuing their activities.

Legislative Journal, February 23, 1988, at 1784.

**9.** Marijuana is defined in 35 P.S. § 780–102 as

consist[ing] of all forms, species and/or varieties of the genus Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every such plant, its seeds or resin; but shall not include tetrahydrocannabinols, the mature stalks of such plant, fiber produced from such stalks, oil or cake

thereby providing a large quantity of marijuana for harvest, but yet be considered only one plant so as to evade the reach of the statute, would be directly contrary to the obvious intent of the legislature. Accordingly, we do not agree with the Erie County Court of Common Pleas that 18 Pa.C.S. § 7508(a)(1)(i), (ii) and (iii) are unconstitutionally vague.[10]

■ Next, we turn to the Commonwealth's argument that the sentencing court also erred in concluding that no rational basis exists for the sentencing statute.

made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, cake, or the sterilized seed of such plant which is incapable of germination.

10. Accepting the testimony of Dr. Gauriloff and Burnsworth, the sentencing court apparently concludes that only 10–12 plants were confiscated, and as such, concludes that the Commonwealth failed to prove by a preponderance of the evidence that the mandatory sentence should apply at all, notwithstanding its decision on the constitutionality of the sentencing provisions. *Commonwealth v. Burnsworth*, No. 2738 of 1993 and No. 2739 of 1993, slip op. at 1 (September 15, 1994). While this finding is somewhat contradictory to the conclusions made during the sentencing proceeding, we note that the sentencing court's reliance on the testimony of the expert is inconsistent with the opinion we render today. Instead, the testimony of Officer Podpora reveals that 77 plants were confiscated. Moreover, Burnsworth testified that he was "essentially responsible for the plantings," (N.T. 7/8/94 at 40), that with respect to the 16 plants (Count 2738), he planted each plant individually from an individual seed, (N.T. 7/8/94 at 44), and that with respect to the 61 plants found in the fenced-in area (Count 2739), he put each individual plant in the soil. (N.T. 7/8/94 at 45.) In fact, when questioned in regard to the planting of the 61 plants, Burnsworth testified as follows:

Q: Now, as to each plant thereafter, after you planted it, then you went out periodically and tended to that, did you not?
A: No.
Q: You just let them grow?
A: Yes.
Q: Never went back to them?
A: I went back to them maybe once or twice.
Q: And your purpose in doing so?
A: Just to see how they was growing.
Q: I see. And they were growing up each in their own plants, each plant growing where you planted it; isn't that correct?
A: They were growing, yeah.

(N.T. 7/8/94 at 45–46.) Consequently, the testimony of Officer Podpora, corroborated by the testimony of Burnsworth, establishes that 77 plants were confiscated.

■ Under a due process/equal protection analysis, it is well established that if a classification does not impermissibly interfere with a fundamental right or disadvantageously affect a suspect class, the classification will be upheld as long as it passes the "rational basis" test. *Plowman v. Commonwealth, Dep't of Transp.*, 535 Pa. 314, 635 A.2d 124 (1993); *James v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 505 Pa. 137, 477 A.2d 1302 (1984). Therefore, since the sentencing statute at issue in this case, 18 Pa.C.S. § 7508, does not implicate a fundamental constitutional right or burden a suspect class, the legislative classification treating growers of marijuana differently from individuals who possess certain quantities of marijuana, must be evaluated under the "rational basis" analysis.

■ To do so, we have set forth a two step approach. *See Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995). First, we must determine whether the challenged statute is designed to further a legitimate state interest or public value. *Id.* at 257–58, 666 A.2d at 269. If it is, we must then determine whether the statute is reasonably related to accomplishing the articulated state interest. *Id.* Essentially, we must address whether the statute has some relationship to the interest which the legislature seeks to promote and whether that relationship is reasonable. We are well aware, however, that "the Constitution does not require situations 'which are different in fact or opinion to be treated in law as though they were the same.'" *Wells v. Civil Service Comm'n*, 423 Pa. 602, 604, 225 A.2d 554, 555, *cert. denied*, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967) (quoting *Goesaert v. Cleary*, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948)).

On March 25, 1988, our legislature enacted P.L. 262, No. 31, § 13, 18 Pa.C.S. § 7508(a)(1)(i), (ii) and (iii), requiring the imposition of minimum mandatory sentences for individuals who violate certain provisions of the Controlled Substance, Drug, Device and Cosmetic Act (Act) when a specified amount

of marijuana is involved.[11]   Noting the language used by Senator Greenleaf in his discussion of the legislation, *see supra* note 8, we have already recognized that the intent of the legislature in enacting this particular sentencing statute was to invoke harsher minimum penalties for drug trafficking. *Commonwealth v. Bell*, 537 Pa. 558, 570, 645 A.2d 211, 217 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1106, 130 L.Ed.2d 1072 (1995).   In 1990, the legislature amended Section 7508 to include the imposition of the mandatory sentences for violations of the Act which involved a specified number of marijuana plants.

Consistent with the stated purpose of Section 7508, we believe that increased penalties for violations involving actual marijuana plants was enacted to discourage or, in fact, deter the production, or growth, of marijuana.   We have held that it is not necessary to conclude that the challenged statute will be absolutely successful in attaining the legislative objective; rather, we need only conclude that the statute is rationally related to the interest that the legislature seeks to promote. *Plowman*, 535 Pa. at 320, 635 A.2d at 127.   Indeed, we need only "identify potential benefits to our citizens as a result of the promulgated legislation." *Id.*   In this instance, clearly, if the manufacture, or growth, of marijuana can be deterred, less marijuana will be available to sell.   Indeed, the cultivation of marijuana plants could be considered far more dangerous to the citizens of this Commonwealth than the possession of the harvested product.   Consequently, we find that the mandatory sentencing provisions of Section 7508 relating to live marijuana plants are, in fact, reasonably related to the legislature's attempt to curtail drug trafficking.

11.   At that time, Section 7508 required:  if the amount of marijuana involved was at least two pounds but less than ten pounds, the sentence shall be one year in prison and a fine of at least $5,000;  if the amount of marijuana involved was at least ten pounds but less than fifty pounds, the sentence shall be three years in prison and a fine of at least $15,000;  and if the amount of marijuana involved was fifty pounds or more, the sentence shall be five years in prison and a fine of at least $50,000.

Accordingly, the opinion of the Erie County Court of Common Pleas is reversed and the case is remanded for sentencing consistent with this opinion.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).