Gene STILP, Petitioner,

v.

COMMONWEALTH OF PENNSYLVANIA, Thomas J. Ridge, Governor of the Commonwealth of Pennsylvania, Catherine Baker Knoll, Treasurer of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 5, 1997
Decided Aug. 20, 1997.

---

Gene Stilp, petitioner, for himself.

Jacqueline Jackson–DeGarcia, Deputy Attorney General, Harrisburg, for respondents.

Before DOYLE and PELLEGRINI, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Before this Court in our original jurisdiction is the preliminary objection of the Commonwealth of Pennsylvania, Governor Thomas J. Ridge, and Treasurer Catherine Baker Knoll[1] (Respondents) to the "Complaint in Mandamus and Bill of Equity" filed by Gene Stilp.[2]

Stilp is a Pennsylvania citizen proceeding *pro se*, who filed this present action challenging Act 51,[3] an act amending the Public Official Compensation Law (Law),[4] on consti-

tutional grounds. Act 51 amended the Law to give members of the General Assembly, judges, as well as executive branch officials a pay increase. With regard to members of the General Assembly, whose pay raise is the subject of this action, Section 3 of Act 51, which amended Section 4 of the Law, increased Legislators' salary through a series of cost of living adjustments (COLAs).

The minimum salary for members of the General Assembly is $47,000 per year plus mileage. Section 4(a) of the Law, 65 P.S. § 366.4(a). Leaders of the House of Representatives and Senate, depending on the specific position, receive additional salary over and above the $47,000 base salary. Section 4(b) of the Law, 65 P.S. § 366.4(b). The Act 51 COLAs would increase the Legislators' base salary by an amount determined by the percentage change in the Consumer Price Index for All Urban Consumers.

The first COLA was scheduled to be paid beginning with the twelve-month period of December 1, 1996, through November 30, 1997.[5] Legislators would also receive a COLA for the following twelve-month period and for each twelve-month period thereafter.[6] Nothing in Section 3 of Act 51, prohibits a

---

1. The current Treasurer is Barbara Hafer who was elected to succeed Catherine Baker Knoll on November 5, 1996.

2. An almost identical complaint was previously filed by Stilp with this Court on January 24, 1996; however, on May 15, 1996, we dismissed Stilp's complaint without prejudice to allow him to seek an alternate forum for his asserted cause of action. Stilp filed a complaint with United States District Court for the Middle District of Pennsylvania on June 24, 1996, which was dismissed in October of 1996. He then returned to this Court and filed the present complaint on January 2, 1997.

3. Act of October 19, 1995, P.L. 324.

4. Act of September 30, 1983, P.L. 160, *as amended*, 65 P.S. §§ 366.1–366.5b.

5. Section 4(c) of the Law, 65 P.S. § 366.4(c), as amended by Section 3 of Act 51, provides as follows:

   **(c) First annual cost-of-living adjustment for members.**—For the 12–month period beginning December 1, 1996, through November 30,

1997, the salary of the members of the General Assembly shall be increased by a cost-of-living factor which shall be determined by increasing amounts contained in subsection (a) [$47,000 plus mileage] by the percentage change in the Consumer Price Index for All Urban Consumers ... for the period from July 1, 1990, through October 31, 1996....

Section 4(c. 1), using substantially the same language quoted above, enacts COLAs for the officers and leaders of the General Assembly for the same period.

6. Sections 4(d) of the Law, 65 P.S. § 366.4(d), provides as follows:

   **(d) Subsequent annual cost-of-living adjustment for members.**—For the 12 month period beginning December 1, 1997, through November 30, 1998, and for each like 12–month period thereafter, the salary of the members of the General Assembly shall be increased by an annual cost-of-living adjustment calculated by applying the percentage change in the Consumer Price Index for All Urban Consumers....

Section 4(d. 1), 65 P.S. § 366.4(d. 1), using substantially the same language, grants leaders and officers of the General Assembly yearly COLAs.

member of the General Assembly who voted for the legislation from receiving a COLA. However, Section 7 of Act 51 [7] provides, *inter alia*, that Section 3 of Act 51 was to take effect "immediately and **be applicable as constitutionally permissible.**" (Emphasis added.)

In addition to increases in salaries, Act 51 increased Legislators' unvouchered expense allowances as well. Under Section 4(a) of the Law, members of the General Assembly are granted an expense allowance of $7,500 per year for clerical assistance and expenses. Section 4 of Act 51, however, added Section 5.2 of the Law, 65 P.S. § 366.5b, which provides that all members of the General Assembly shall receive an additional unvouchered expense allowance of $733 per month for the year from November 1, 1995 to November 30, 1996. Leaders of the Senate and House of Representatives were given further unvouchered expense account increases. With regard to the Senate only, for the years 1996 and 1997, the unvouchered expense allowance will increase by the same formula used for calculating the COLAs.[8]

Stilp contends in his complaint that Respondents violated Article II, Section 8 of the Pennsylvania Constitution by approving the General Assembly's pay and unvouchered expense increases in Act 51 and by disbursing monies thereunder. Article II, Section 8 of the Pennsylvania Constitution provides as follows:

The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. **No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.** (Emphasis added.)

Stilp alleges that the COLAs established by Act 51 violate the above provision, because the COLAs will allow incumbent members of the Pennsylvania Senate who voted on October 17, 1995, for the salary increase to receive that new salary during their next succeeding four-year term. (Paragraphs 46–50 of the Complaint.) Stilp avers that twenty-five members of the Senate were either elected in 1994 or serve a term until 1998. Furthermore, Stilp asserts that, because Act 51 increases the unvouchered expense allowance in proportion to the COLAs by using the same formula, the unvouchered expenses are a de facto salary increase unconstitutionally granted to Legislators during the term for which they were elected. (Paragraphs 51–55 of the Complaint.) [9]

Respondents filed preliminary objections in the nature of a demurrer to Stilp's complaint, asserting that Act 51 does not violate any provision of the Pennsylvania or United

7. There is no parallel Purdon's citation for Section 7 of Act 51.

8. Sections 5.2(d), (d. 1), 65 P.S. § 366.5b(d), (d.1), give Senators expense increases as follows:
   **(d) Senators Expense Allowance 1996–1997.—** Senators elected at the General Election of 1994 shall receive for the 12–month period beginning December 1, 1996, and ending November 30, 1997, in addition to any [other allowance] ..., an annual unvouchered expense allowance of $8,800 **increased by the dollar amount that the increase calculated pursuant to section (4)(c) [pertaining to the 1996–1997 COLAs]** ....
   **(d. 1) Senators expense allowance 1997–1998.**—Senators elected at the General Election of 1994 shall receive for the 12–month period beginning December 1, 1997, and ending November 30, 1998 ... an annual unvouchered expense allowance **increased by the**

**dollar amount of the increase calculated pursuant to section 4(d) [pertaining to the 1997–1998 COLAs]** ....
(Emphasis added.)
   Sections 5.2(e) and (e. 1), 65 P.S. § 366.5b(e), (e. 1), give Senate officers and leaders expense account increases by "the dollar amount calculated" for the leaders' COLAs.

9. Stilp also alleges in Count 2 of his complaint that the Respondents' approval and disbursement of monies under Act 51, with regard to the unvouchered expense allowance, violates his rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution and Article I, Sections 1 and 26 of the Pennsylvania Constitution. He asserts that the expense allowance is not reasonably related to any legitimate government goal. This issue is discussed *infra*.

States Constitutions. Specifically, Respondents contend that the COLAs do not violate Article II, Section 8 of the Pennsylvania Constitution because Act 51 provides that the COLAs are only "applicable as constitutionally permissible." With regard to the unvouchered expense allowances, the Respondents assert that such allowances are not the equivalent of "salary" under our Supreme Court's decision in *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986).

■■■ A demurrer is an assertion that a complaint does not set forth a cause of action on which relief may be granted. *David v. Secretary of Public Welfare*, 143 Pa.Cmwlth. 161, 598 A.2d 642 (1991). When deciding a preliminary objection in the nature of a demurrer, we must accept as true all well-pled allegations, *Snyder v. City of Philadelphia*, 129 Pa.Cmwlth. 89, 564 A.2d 1036 (1989), and a demurrer will only be sustained when it appears that, in accepting the allegations as true, no recovery exists under any theory of law. *Lincoln Party v. General Assembly*, 682 A.2d 1326 (Pa.Cmwlth.1996).

■■■ It is a firmly settled presumption that the General Assembly does not intend to violate the constitution. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3). Accordingly, there is a strong presumption of constitutionality afforded to acts of the General Assembly, *Pennsylvania Liquor Control Board v. Spa Athletic Club*, 506 Pa. 364, 485 A.2d 732 (1984), and any party challenging the constitutionality of a statute bears the heavy burden of showing that the act clearly, palpably and plainly violates the constitution. *Commonwealth v. Burnsworth*, 543 Pa. 18, 669 A.2d 883 (1995).[10]

■■■ Respondents argue that the increase in the Legislators' unvouchered expense allowance does not constitute an increase in the salary of the members of the General Assembly and, therefore, is not in violation of Article II, Section 8, of the Pennsylvania Constitution. In *Consumer Party*, our Supreme Court held that unvouchered expense allowances are neither salary nor mileage and, therefore, are outside of the scope of Article II, Section 8. The Supreme Court concluded that an expense allowance is rather an amount paid to cover expenses incurred in the performance of the legislators' services. *Id.* Salary, unlike an expense allowance, is a fixed payment at regular intervals made in return for services. Hence, increases in unvouchered expense allowances to current members of the General Assembly, even when paid during the term of those voting on the increase, is not violative of our Constitution. *Id.* Therefore, because such increases in unvouchered expense allowances in Act 51 are not contrary to Article II, Section 8 of the Pennsylvania Constitution, *Consumer Party*, Stilp's complaint fails to state a cause of action. *See Kennedy v. Commonwealth*, 119 Pa.Cmwlth. 24, 546 A.2d 733 (1988).

However, Stilp argues that, considering that the expense allowances are increased by the same formula used to grant Legislators' salary COLAs, the increase in the expense

---

**10.** Stilp argues that the presumption in favor of the constitutionality of a statute should no longer be applied in light of our decision in *Common Cause of Pennsylvania v. Commonwealth*, 668 A.2d 190 (Pa.Cmwlth.1995), *aff'd*, 544 Pa. 512, 677 A.2d 1206 (1996). In that decision, however, we did not abrogate the presumption of constitutionality and, in fact, we reaffirmed the principle that statutes enjoy such a presumption. In *Common Cause*, we determined that, under the specific facts of that case, it was appropriate for us to disregard the enrolled bill doctrine and analyze the procedures used by the General Assembly to enact certain legislation. The "enrolled bill doctrine" is rule that restrains courts from inquiring into the procedural steps underlying the enactment of legislation. *Kilgore v. Magee*, 85 Pa. 401 (1877).

The instant case, unlike *Common Cause*, does not involve a challenge to the procedures the General Assembly used to enact Act 51. Rather, this action is an attack on the decisions of executive branch officials, the Governor and the Treasurer, in approving legislation and disbursing monies and, thereby, allowing certain legislators to collect money in a manner contrary to Pennsylvania's Constitution. Therefore, *Common Cause*, is inapplicable here, and Act 51 is entitled to be presumed constitutional.

allowance must be deemed to be a salary increase. We disagree. Merely because the expense allowances and COLAs are determined by using the same formula does not automatically transform the expense allowances into additional salary. Moreover, the COLA's and the expense allowances are calculated using the Consumer Price Index for Urban Consumers. Section 4 of the Law. In our view, it is not unreasonable to augment the Legislators' expense allowance and salary in proportion to actual increases in the cost of living measured by the consumer price index. Therefore, this argument must fail.

Relying on *Consumer Party*, Stilp further argues that the unvouchered expense allowance is unconstitutional because it is not reasonably related to the actual expenses incurred by members of the General Assembly. A fair reading of *Consumer Party* does support the view that an unreasonable expense allowance could be unconstitutional.[11] The *Consumer Party* Court indicated that a plaintiff asserting that an expense allowance is unreasonable has a heavy burden to prove that the challenged expense allowance is, in reality, not needed and not intended to pay for the legitimate expenses of Legislators, and that it is a sham designed to hide a salary increase. Stilp, however, has not averred any facts in his complaint that could support a cause of action on the theory that the Act 51 expense allowance is unreasonable.

Stilp did make the bald assertion in the "Introductory Statement" portion of his complaint that the increased Legislators' expense allowance "bear[s] no reasonable relationship to actual expenses incurred by members." (Complaint at 2.) But, Stilp did not specifically aver that the expense allowance was unnecessary and would not be used to pay for legitimate expenses of Legislators, that the allowance exceeded the Legislators' actual expenses, or that a lesser allowance than the one established in Act 51 would be more reasonable. Hence, because Stilp never properly pled that the allowances unreasonably exceeded the actual expenses of the members of the General Assembly, this argument is without merit.[12]

■ Respondents also challenge Stilp's claim that the COLAs enacted by Act 51 violate the Pennsylvania Constitution, because Section 7 of the Act states that the COLAs were intended by the General Assembly to apply only as constitutionally permissible, and therefore Stilp's complaint fails to state a cause of action. We must agree. While Section 3 of Act 51 granted each member of the General Assembly a COLA without regard to when the member was elected, Section 7 of Act 51 provides that Section 3 "shall be applicable as constitutionally permissible." Considering that the General Assembly does not intend to violate the constitution, we construe the phrase "applicable as

11. As part of a discussion of the merits of unvouchered and vouchered expense allowance systems, the *Consumer Party* Court stated that **"as long as the [unvouchered] expense allowance fixed is reasonably related to actual expenses,** the lack of mathematical precision inherent in such a system does not present a problem." 510 Pa. at 186, 507 A.2d at 337 (emphasis added).

12. Stilp's contention that the expense allowances are unreasonable is related to Count 2 of his complaint, where he asserts that Respondents' approval and disbursement of monies under Act 51, in particular the expense allowance, violate his rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution and Article I, Sections 1 and 26 of the Pennsylvania Constitution.

The Fourteenth Amendment to the United States Constitution precludes states from denying United States citizens, among other things, equal

protection under the law. Article I, Section 1 of the Pennsylvania Constitution protects the inherent rights of citizens to life, liberty, property and the pursuit of happiness. Article I, Section 26 prevents the Commonwealth and its political subdivisions from discriminating against any person in the exercise of a civil right.

Our review of Stilp's complaint, however, reveals no allegation that the Respondents, through their approval of Act 51 or disbursement of monies thereunder, impermissibly discriminated against Stilp or any similarly situated persons. Act 51, on its face, does not, of course, place Stilp and the members of the General Assembly in different classes. The Act only deals with the compensation of public officers. However, Stilp does not explain in his complaint how *his* inherent rights as a citizen are abrogated by Act 51 or the executive decisions of Respondents. This contention, therefore, is meritless.

constitutionally permissible" as meaning that Section 3 of Act 51 (a) would not become effective if the COLAs violated Article II, Section 8, of the Pennsylvania Constitution and (b) that the COLA's will, however, be presumed constitutional unless proven to be unconstitutional. Therefore, because Section 7 of Act 51 allows members of the General Assembly to receive a COLA only as "constitutionally permissible," and Stilp has not established that their payment would be unconstitutional, he has not, therefore, stated a cause of action.[13]

Accordingly, for all the above reasons, Respondents' preliminary objection in the nature of a demurrer is sustained and Stilp's complaint is dismissed.

### ORDER

**NOW,** August 20, 1997, the preliminary objection in the nature of a demurrer of the Commonwealth of Pennsylvania, Governor Thomas J. Ridge and Treasurer Catherine Baker Knoll in the above-captioned matter is hereby sustained and the Complaint in Mandamus and Bill of Equity of Gene Stilp is hereby dismissed.

---

**13.** Stilp's complaint, which was filed with this Court on January 2, 1997, approximately one month after the first COLA was due to be paid, does not aver that any member of the General Assembly who was elected during the term when Act 51 was passed has, in fact, received a COLA.