48 A.3d 1221

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Nivardo CARELA–TOLENTINO, Appellant.**

Supreme Court of Pennsylvania.

Argued April 10, 2012.

Decided July 17, 2012.

Vincent J. Quinn, Eager, Spinello, Quinn & Stengel, for Carela–Tolentino, Nivardo.

Andrew James Gonzalez, Todd Patrick Kriner, Susan E. Moyer, Craig William Stedman, Lancaster County District Attorney's Office, for Commonwealth of Pennsylvania.

CASTILLE C.J., SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, ORIE MELVIN, JJ.

## ORDER

PER CURIAM.

AND NOW, this 17th day of July, 2012, the order of the Superior Court is hereby AFFIRMED.

Justice ORIE MELVIN did not participate in the decision of this case.

Justice SAYLOR, EAKIN, BAER and McCAFFERY join the per curiam affirmance.

Chief Justice CASTILLE files a dissenting statement in which Justice TODD joins.

Chief Justice CASTILLE dissenting.

The Court today summarily affirms, without opinion, the Superior Court's determination that the mandatory $25,000 fine imposed in this drug possession case was not unconstitutionally excessive. Because I believe that there must be some rational and reasonable relationship between the actual criminal conduct, the circumstances at issue, and the fine imposed, and because I believe that sentencing courts must have some discretion to ensure that such a relationship exists, I would find that the one-size-fits-all mandatory approach represented by 18 Pa.C.S. § 7508 violates constitutional prohibitions against excessive fines. Hence, I respectfully dissent.

Appellant pleaded guilty to possession with intent to deliver ("PWID") roughly 188 grams of cocaine.[1] On September 11, 2008, the trial court sentenced appellant to four to ten years of imprisonment and a fine of $25,000. The four year minimum and the fine were mandatory under 18 Pa.C.S. § 7508(a)(3)(iii), which is triggered if the amount of cocaine involved is at least 100 grams. Thus, the trial court essentially exercised no sentencing discretion. Appellant's post-sentence motion challenging the sentence and fine was denied and he appealed to the Superior Court, which affirmed in an unpublished opinion relying upon its own precedent in *Commonwealth v. Gipple,*

1. There is some suggestion in the record that appellant may have intended to purchase this rather large amount in conjunction with at least one other person. During his plea colloquy, in response to questions posed by the court, appellant responded affirmatively when asked by the court: "Is it also true that you intended to give some of that to another person?" Appellant also stated: "Some of it was mine and some was for the other person." N.T., 9/11/08, at 3. Given the mandatory nature of the sentence, and the plea, the point was not developed.

418 Pa.Super. 119, 613 A.2d 600 (1992), *appeal denied,* 533 Pa. 623, 620 A.2d 490 (1993), which rejected a constitutional "excessive fines" challenge to Section 7508.

This Court granted appellant's petition for allowance of appeal, limiting review to the question of whether the mandatory minimum fines in Section 7508 violate the prohibitions against "excessive fines" set forth in the Eighth Amendment to the U.S. Constitution and Article 1, Section 13 of the Pennsylvania Constitution.[2] *Commonwealth v. Carela–Tolentino,* 610 Pa. 10, 17 A.3d 922 (2011). In this context, these constitutional provisions are coextensive. *See Commonwealth v. 5444 Spruce Street, Philadelphia,* 574 Pa. 423, 832 A.2d 396, 399 (2003).

Appellant does not dispute that mandatory fines may be valid as a punitive and deterrent measure against drug trafficking offenders. But, appellant argues, the amount of the fine here is unconstitutionally excessive. He asserted at his plea colloquy that at the time of his offense, he was thirty-six years old, had only an eighth-grade education, had lived in the same area for six years, had worked for the same employer for four years, had a wife and children, and, most importantly, had no prior criminal record. He claimed that he acquired the cocaine only because he "fell into a drug habit." N.T., 9/11/08, at 2–6. Appellant adds that even though he pleaded guilty to PWID, there was no history or evidence that he was engaged in actual drug dealing. He suggests that absent any nexus between the offense and the fine amount, the fine was disproportionate and unconstitutionally excessive. To this end, he cites certain forfeiture cases, including *Commonwealth v. 5043 Anderson Road, Buckingham Township, Bucks County,* 699 A.2d 1337 (Pa.Cmwlth.1997), *aff'd,* 556 Pa. 335, 728 A.2d 907 (1999), for the proposition that forfeiture of a defendant's property to satisfy mandatory minimum drug offense fines is

---

**2.** The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Pennsylvania Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. art. I, § 13.

constitutional only to the extent that the amount to be forfeited is significantly and proportionally related to the underlying drug offense. Appellant's Brief at 13–14.

The Commonwealth responds that, in the context of a constitutional excessive fine challenge, the dispositive inquiry is whether the fine is irrational and unreasonable, relying upon the Superior Court's opinion in *Gipple*, 613 A.2d at 602. Still following *Gipple*, the Commonwealth adds that fines serve the twin goals of punishment and deterrence, and in the drug trafficking context, fines are reasonably set at amounts tiered and keyed to the amount of drugs involved so as to discourage future continued violations. The Commonwealth also dismisses appellant's reliance on the "nexus" approach used in forfeiture cases. The Commonwealth argues that the point of imposing forfeiture in the context of drug dealing is to confiscate funds, assets, or property that is acquired or retained through drug trafficking offenses that have already been committed. By contrast, the Commonwealth posits, mandatory fines based on possession of substantial amounts of illegal substances both punish past conduct and deter future conduct, which differs in fact and theory from forfeiture.[3] As such, the Commonwealth concludes, the automatic mandatory minimum fines set forth in Section 7508 are neither irrational nor unreasonable, and they therefore do not violate the excessive fines prohibitions of either the Pennsylvania or the U.S. Constitution.

Section 7508, originally enacted in 1988 at the height of the crack cocaine epidemic, imposes mandatory minimum prison sentences and fines on defendants convicted of drug trafficking offenses, or inchoate trafficking convictions, such as PWID; the sentences and fines increase correspondingly as the amount (by weight or volume) of the illegal drugs "involved" in the criminal conduct increases. In this appeal, the relevant provisions, which apply the highest potential manda-

---

3. As will be further discussed *infra*, both this Court and the U.S. Supreme Court have, in fact, held that in the context of excessive fines challenges, forfeitures are "fines." *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998); *5444 Spruce St.*, 832 A.2d at 399.

tory minimum fine when cocaine (or cocaine derivatives, components, or analogs) is at issue, read as follows:

(a) General rule.—Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:

\* \* \* \* \* \*

(3) A person who is convicted of violating section 13(a)(14), (30) or (37) of The Controlled Substance, Drug, Device and Cosmetic Act where the controlled substance is coca leaves or is any salt, compound, derivative or preparation of coca leaves or is any salt, compound, derivative or preparation which is chemically equivalent or identical with any of these substances or is any mixture containing any of these substances except decocainized coca leaves or extracts of coca leaves which (extracts) do not contain cocaine or ecgonine shall, upon conviction, be sentenced to a mandatory minimum term of imprisonment and a fine as set forth in this subsection:

\* \* \* \* \* \*

(iii) when the aggregate weight of the compound or mixture of the substance involved is at least 100 grams; four years in prison and a fine of $25,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: seven years in prison and $50,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity.

18 Pa.C.S. § 7508.

As to fines, then, the provision sets a mandatory floor of $25,000, but requires a higher fine if $25,000 is not enough to "exhaust the assets" and "proceeds" involved in the drug trafficking offense at issue. Contrary to the Commonwealth's argument, this is not unlike the goal of forfeiture. Presumably, the trial judge faced with imposing a fine under Section 7508 determines whether $25,000 is sufficient to exhaust assets and proceeds amassed by a defendant engaged in drug

trafficking. However, by its terms, the flexibility in the
mandatory minimum fine scheme works only one way; the
statute reposes no discretion in the judge to impose a lesser
fine if the court determines that a lesser amount will suffi-
ciently exhaust the defendant's assets and proceeds in relation
to the offense committed. Indeed, the statute requires no
relationship between the fine and the assets and proceeds
before the mandatory $25,000 fine is imposed: as to the
statutory floor, one size fits all.

In the near-quarter century since Section 7508 was enacted,
Pennsylvania courts have passed upon a number of constitu-
tional challenges to the provision, but have not yet addressed
a challenge premised upon whether the provision's mandatory
minimum fines are constitutionally excessive. *See Common-
wealth v. Burnsworth*, 543 Pa. 18, 669 A.2d 883, 889 (1995)
(Section 7508 marijuana provisions did not violate due process
or equal protection because scheme of sentencing and fines
was rationally related to General Assembly's legitimate stated
goal of deterring drug trafficking); *Commonwealth v. Bell*,
537 Pa. 558, 645 A.2d 211, 216–18 (1994) (rejecting argument
that statutory scheme was unconstitutionally vague and violat-
ed due process because it lacked express maximums in addi-
tion to minimums). *See also Commonwealth v. Kleinicke*, 895
A.2d 562 (Pa.Super.2006) (*en banc* ) (marijuana subsections of
Section 7508 do not violate Sixth Amendment right to trial by
jury because statutory scheme regulates only minimum sen-
tence and does not increase maximum punishment for convic-
tion); *Commonwealth v. Arriaga*, 422 Pa.Super. 52, 618 A.2d
1011 (1993) (cocaine subsections of Section 7508 do not violate
constitutional protection against double jeopardy because they
punish only current offense and are not a new prosecution);
*Commonwealth v. Biddle*, 411 Pa.Super. 210, 601 A.2d 313
(1991) (mandatory minimum sentence provisions like Section
7508 do not violate separation of powers principle because
Legislature may limit sentencing court discretion to impose
lesser sentence than mandatory minimum and may also grant
prosecution discretion to seek penalty under such provisions).

In 1993, this Court denied allocatur from the Superior
Court's decision in *Gipple*, which remains the most relevant

existing precedent; the Court's *per curiam* action today effectively leaves *Gipple* as the controlling law. In that case, the defendant pleaded guilty in 1990 to PWID charges involving multiple drug substances. Under Section 7508, he was sentenced to a minimum sentence of four years and three months in prison and a mandatory fine of $20,000. On appeal, the defendant argued that the fine, which was imposed without inquiry as to his ability to pay it, violated the Pennsylvania Constitution's prohibition against excessive fines at Article I, Section 13, which is quoted *supra* at note 2. The Superior Court rejected the challenge, stating that a defendant's ability to pay is irrelevant to the constitutional question of whether a fine is irrational or unreasonable. To the unanimous *Gipple* panel, the fines set forth in Section 7508 were valid as both punitive and deterrent measures against drug trafficking: "Simply put, there is no evidence to suggest that Article I, Section 13 of the Pennsylvania Constitution is in anyway offended when those properly and justly convicted of drug dealing are sentenced to pay for the price they cost society. [Gipple's] constitutional challenge must, therefore, fail." *Id.* at 603. The *Gipple* panel did not explain how it determined that the one-size-fits-all mandatory minimum fine required by Section 7508 reflected the actual "price" that drug offenders "cost society," and the equivalence is decidedly not self-evident.[4]

The U.S. Supreme Court has stated that "at the time the Constitution was adopted, the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense. The Excessive Fines Clause thus limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian,* 524 U.S. 321, 327–28, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998) (citations and internal quotation marks omitted) (forfeiture of over $350,000 deemed unconstitutionally excessive).[5] Al-

4. Combing the legislative history of Section 7508 reveals no debate in either the House or Senate as to the particular fine amounts specified in the various subsections.

5. The defendant in *Bajakajian* attempted to leave the country with $350,000 in cash, in violation of federal law requiring that any amount

though *Bajakajian* involved forfeiture and not mandatory minimum fines, the High Court concluded, as previously indicated in note 3, that "forfeiture of [the defendant's] currency constitutes punishment and is thus a 'fine' within the meaning of the Excessive Fines Clause." *Id.* at 334, 118 S.Ct. 2028. Nevertheless, the High Court could not ascertain a viable test through the plain text of the clause or through historical analysis.[6] Instead, the Court analogized to precedent regard-

over $10,000 be reported. The federal district court, after determining that the money was not the proceeds of illegal activity, nor was it to be used for illegal activities abroad (the defendant testified that he was taking it overseas to repay a legitimate debt), assessed a forfeiture of $15,000 and imposed an additional fine of $5,000, the maximum allowable under the Sentencing Guidelines. The U.S. government appealed, seeking forfeiture of the entire amount, but the U.S. Court of Appeals for the Ninth Circuit affirmed imposition of the lesser penalty.

6. As the following segment reveals, the High Court's inability in *Bajaka-jian* to solve the question presented through either plain text or historical analysis certainly did not result from lack of strenuous effort to do so:

The text and history of the Excessive Fines Clause demonstrate the centrality of proportionality to the excessiveness inquiry; nonetheless, they provide little guidance as to how disproportional a punitive forfeiture must be to the gravity of an offense in order to be "excessive." Excessive means surpassing the usual, the proper, or a normal measure of proportion. *See* 1 N. Webster, American Dictionary of the English Language (1828) (defining excessive as "beyond the common measure or proportion"); S. Johnson, A Dictionary of the English Language 680 (4th ed. 1773) ("[b]eyond the common proportion"). The constitutional question that we address, however, is just how proportional to a criminal offense a fine must be, and the text of the Excessive Fines Clause does not answer it.

Nor does its history. The Clause was little discussed in the First Congress and the debates over the ratification of the Bill of Rights. As we have previously noted, the Clause was taken verbatim from the English Bill of Rights of 1689. That document's prohibition against excessive fines was a reaction to the abuses of the King's judges during the reigns of the Stuarts, but the fines that those judges imposed were described contemporaneously only in the most general terms. *See Earl of Devonshire's Case,* 11 State Tr. 1367, 1372 (H.L.1689) (fine of £30,000 "excessive and exorbitant, against Magna Charta, the common right of the subject, and the law of the land"). Similarly, Magna Charta—which the Stuart judges were accused of subverting—required only that amercements (the medieval predecessors of fines) should be proportioned to the offense and that they should not deprive a wrongdoer of his livelihood:

A Free-man shall not be amerced for a small fault, but after the manner of the fault; and for a great fault after the greatness

ing the companion "Cruel and Unusual Punishments Clause" of the Eighth Amendment, and determined: "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense. . . . In applying this standard, the district courts in the first instance, and the courts of appeals, reviewing the proportionality determination *de novo,* must compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 337, 118 S.Ct. 2028 (footnote omitted). The Court set forth factors to aid in determining whether a proposed forfeiture would be grossly disproportional to the underlying offense: the gravity of the offense, whether the defendant committed other illegal activities either concurrently or in the past, and how the forfeiture compares with the maximum criminal penalty possible for the offense. In that light, the High Court determined that forfeiture of over $350,000 was grossly disproportionate to the offense that the defendant committed, and therefore the proposed forfeiture was unconstitutionally excessive in violation of the Eighth Amendment.[7] *Id.* at 334–39, 118 S.Ct. 2028.

It is an easy enough matter to look the other way at one-size-fits-all mandatory fines because the goal of deterring and punishing drug trafficking is clearly meritorious. Notably, however, former U.S. Supreme Court Chief Justice William H. Rehnquist once critiqued mandatory minimums in a speech as "perhaps a good example of the law of unintended consequences." William H. Rehnquist, Luncheon Address, in Unit-

thereof, saving to him his contenement; (2) and a Merchant likewise, saving to him his merchandise; (3) and any other's villain than ours shall be likewise amerced, saving his wainage. Magna Charta, 9 Hen. III, ch. 14 (1225), 1 Stat. at Large 6–7 (1762 ed.). *Bajakajian,* 524 U.S. at 334–36, 118 S.Ct. 2028 (some citations omitted).

7. Justice Kennedy, joined by Chief Justice Rehnquist, Justice O'Connor, and Justice Scalia, issued a dissenting opinion. The dissenters skeptically critiqued the Majority's application of the "gross disproportion" test as a "see-no-evil approach" that effectively condoned international money launderers (Justice Kennedy seemed to be convinced that the defendant was one) by punishing their crimes with forfeitures that amounted to mere slaps on the wrist. *Bajakajian,* 524 U.S. at 344–56, 118 S.Ct. 2028 (Kennedy, J., dissenting).

ed States Sentencing Commission, Drugs and Violence in America: Proceedings of the Inaugural Symposium on Crime and Punishment in the United States 283, 286 (1993) (quoted in Molly Booth, *Sentencing Discretion at Gunpoint: How to Think About Convictions Underlying [18 U.S.C.] § 924(c) Mandatory Minimums*, 77 U. Chi. L.Rev. 1739 (2010)). A decade later, when Congress attempted a further legislative restriction of federal judicial sentencing discretion, Chief Justice Rehnquist reiterated his discomfort: "[T]his legislation, if enacted, would do serious harm to the basic structure of the sentencing guideline system and would seriously impair the ability of courts to impose just and reasonable sentences." Letter from Chief Justice William Rehnquist to Senator Patrick Leahy 2 (Apr.2003) (quoted in Skye Phillips, *Protect Downward Departures: Congress and the Executive's Intrusion into Judicial Independence*, 12 J.L. & Pol'y 947, 991). Put simply, mandatory minimums are automatic, indiscriminate, and blunt provisions that deny trial courts the ability to calibrate punishment to correspond to a defendant's actual criminal conduct and circumstances. As one scholar, a former federal prosecutor during the crack epidemic of the 1980s, has observed, these types of sentencing provisions transform judges into "mere automatons" permitted only to mechanically impose standardized and arbitrary sentences without the authority to perform the difficult and nuanced job of determining "the punishment that best fits each particular crime and, even more importantly, each unique offender." David M. Zlotnick, *The War Within the War on Crime: The Congressional Assault on Judicial Sentencing Discretion*, 57 SMU L.Rev. 211, 212–15 (2004).

Professor Zlotnick added that at the federal level, the crack cocaine wave of the mid-to-late 1980s pushed Congress into an "anti-drug frenzy" where the demand for expeditious passage of tough drug enforcement legislation overrode the traditional process of deliberation. According to Professor Zlotnick's research, the 1986 Anti–Drug Abuse Act, 21 U.S.C. § 841, which set mandatory minimum sentences for defenders convicted of trafficking in extremely large amounts of narcotics,

was passed "without any hearings, with no input from the judiciary, and very little input from even law enforcement agencies." *Id.* at 218–19. Of course, the drug fears in the 1980s affected the states no less than the federal government. Thus, the same impetus behind federal mandatory drug sentences and fines may well have governed our own General Assembly shortly thereafter.

Indeed, my review of the legislative debate surrounding Section 7508 suggests that the legislative process leading to enactment of the statute was not unlike that in the U.S. Congress: some individual legislators critiqued mandatory sentencing (albeit during the discussions, prison terms were clearly the stronger focus than fines) and spoke in favor of judicial discretion, but their voices were few and far between, measured against the far louder cries calling for more punishment or, in the alternative, more treatment and social aid.[8]

With regard to Section 7508, it is unclear how the General Assembly arrived at the numbers it assigned for mandatory minimum fines. The $25,000 amount for all cases involving over 100 grams of cocaine is substantial (and was even more so when the legislation was enacted in 1988), and well beyond the means of many individuals. There is no argument forwarded that $25,000 represents some measured examination of the cost or value "on the street" of cocaine, either then or now. Presumably, the figure was borrowed from similar statutes

---

8. State Senator Edward·P. Zemprelli of Allegheny County described "the tragedy of mandatory sentencing" in an instance where "it absolutely divested the court of an opportunity to deal with a situation that called for a little compassion, called for a little sympathy, called for a little understanding, and the court's hands were tied because it could not do anything about it." Pa. Senate Legislative Journal, 2/23/88, at 1783. In the House, Representative John Broujos of Cumberland County, stated: "We have had a system in Pennsylvania that has worked for decades—I would like to say centuries—and that is placing within the hands of a judge the question of sentencing. Only a judge first as elected and as qualified to make these decisions sees the presentence report, judges the case, may have heard the case, knows the district attorney, knows the parties, and makes a decision on sentencing. Gradually, with mandatory sentencing and the other abuses to the sentencing system, we have eroded the power of the judge to make those decisions." Pa. House of Representatives Legislative Journal, 3/16/88, at 363.

being enacted across the nation at the time, or perhaps it was just fixed arbitrarily by the legislative committee charged with drafting the legislation.[9] By notable contrast, Section 7508's language provides a guiding principle for sentencing courts that determine to impose a fine in excess of the statutory minimums; courts are to impose the applicable minimal statutory fine "or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity." There is, then, a clearly worded indication that the General Assembly intended Section 7508 not just to punish and deter bluntly, but specifically to deplete convicted drug dealers of money acquired through their illegal drug trafficking activities, not unlike the goal of forfeiture discussed above. And Section 7508 is within the Crimes Code, so it must be read strictly in the defendant's favor. *See* 1 Pa.C.S. § 1928(b)(1). In my view, the foregoing reading of Section 7508, based on the language of the criminal statute itself, belies the Commonwealth's theory that fines and forfeiture are totally distinct creatures, having nothing in common, that cannot possibly be treated as analytically similar.

Combining the "sufficient to exhaust the assets" language of Section 7508 with the conclusion of this Court and the U.S. Supreme Court that forfeitures are to be viewed as fines for purposes of Eighth Amendment excessiveness inquiries, I believe that our case law on forfeiture suggests an alternative that could restore some measure of rationality and reasonability to sentencing and fines in the problematic area of drug trafficking. Our 2003 decision in *5444 Spruce Street* addressed whether forfeiture of the defendant's house in Philadelphia was excessive and grossly disproportionate to the underlying PWID offense. The narcotics in question had a value of under $100; none of the usual "trappings" of systematic drug dealing, such as scales or cutting agents, were found at the property; and the defendant testified that she pleaded

9. It is notable that the mandatory fines have not been adjusted in the twenty-four years since the statute took effect. There may be a valid point that if the fines set were appropriate for the times in 1988, they may have by now become inappropriately lenient. But the arbitrary nature of the amount remains the constant.

guilty solely to protect her daughter, who was the actual drug dealer. The defendant argued that forfeiture of her house for such a relatively minor and isolated offense violated both the U.S. and Pennsylvania Constitutions. This Court considered the applicability of the High Court's decision in *Bajakajian*.

*5444 Spruce Street* was an *in rem* forfeiture matter, and *Bajakajian* was an *in personam* forfeiture matter, but this Court accepted that *Bajakajian's* general principles applied because both cases entailed "excessive fines" claims. As such, we held, the proposed forfeiture must be remanded for a court to apply the *Bajakajian* factors comparing the potential forfeiture to the underlying offense: whether the defendant's conduct was an isolated violation or "part of a pattern of misbehavior," the actual or potential harm that could result from the underlying offense, and whether the forfeiture sought was the maximum allowable under the controlling statute. Through that analysis, the trial court was to determine whether the forfeiture sought by the prosecution was grossly disproportional to the gravity of the offense committed. *5444 Spruce Street*, 832 A.2d at 400–03.

The language of Section 7508 regarding how fines above the minimum are to be assessed, combined with constitutional concerns focusing on reasonability, rationality, and proportionality, as demonstrated by the more nuanced approach of forfeiture cases like *Bajakajian* and *5444 Spruce Street*, would restore discretion to sentencing courts-the entities best suited to determine how the goals of punishment, deterrence, and depletion of illegal gains should be achieved in a given case. This would ensure that punishment is just, but not excessive. By contrast, I am convinced that mechanical imposition of mandatory minimums, as applied in cases like appellant's, can result in violation of constitutional prohibitions against excessive fines. Therefore, I respectfully dissent.

Justice TODD joins this Dissenting Statement.