# IN THE SUPREME COURT OF IOWA

No. 14–1174

Filed February 17, 2017

**STATE OF IOWA,**

    Appellee,

vs.

**DAIMONAY DARICE RICHARDSON,**

    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

A juvenile convicted of second-degree murder seeks further review of a court of appeals decision affirming the district court's restitution order. **DECISION OF COURT OF APPEALS AND JUDGMENT AND SENTENCE OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender, Rachel C. Regenold (until withdrawal), then Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, and Jerry Vander Sanden, County Attorney, for appellee.

**MANSFIELD, Justice.**

After pleading guilty to second-degree murder, the defendant was ordered to pay $150,000 in mandatory restitution to the estate of the victim. *See* Iowa Code § 910.3B (2013). The defendant was fifteen years old at the time of the offense. We are asked to decide whether Iowa law authorized the sentencing court to consider the age of the defendant and related circumstances before ordering this restitution. If not, we must determine whether mandatory minimum restitution violates the defendant's rights under article I, section 17 of the Iowa Constitution.

For the reasons discussed herein, we conclude that a recent change in Iowa sentencing law does not affect mandatory minimum restitution under Iowa Code section 910.3B. We further conclude that section 910.3B is not unconstitutional either as applied to all juvenile homicide offenders or as applied to this defendant. Accordingly, we affirm the judgment and sentence of the district court and the decision of the court of appeals.

## I. Background Facts and Proceedings.

On June 10, 2013, officers with the Cedar Rapids Police Department were dispatched to an apartment complex after tenants and maintenance supervisors noticed a foul odor and flies emanating from an apartment. Inside the apartment, officers discovered a decomposing body later identified as that of Ronald Kunkle. Kunkle had been stabbed to death.

During the ensuing investigation, officers learned that the defendant, fifteen-year-old Daimonay Richardson, and her nineteen-year-old boyfriend D'Anthony Curd had used Kunkle's electronic benefit transfer (EBT) card to make purchases at a gas station on May 19.

Richardson had been kicked out of her home a few months before[1] and was residing in another apartment in the same complex. Richardson had an arrangement with the tenant of that apartment in which she traded babysitting services for permission to stay there and apparently for alcohol and drugs. Curd also lived in the same apartment part of the time.

On August 19, officers interviewed Richardson regarding Kunkle's death. Richardson eventually confessed that she helped Curd murder Kunkle on or about May 18. According to Richardson, Curd had been with Kunkle in Kunkle's apartment that day and said that he saw Kunkle with $2000 in cash. Curd then developed a plan for the two of them to go back to Kunkle's apartment, stab Kunkle to death, and take the $2000. Curd said to Richardson, "[Y]ou're going to have to stab him first, that way if we get caught, you will get in trouble if you snitch on us . . . ."

Curd grabbed two knives out of the butcher block, gave one to Richardson, and they went back to Kunkle's apartment. Richardson had her knife in her front pocket; Curd had his in his back pocket.

Inside Kunkle's apartment, Curd and Kunkle played beer pong for about five minutes, at which point Curd signaled to Richardson to stab Kunkle. She stabbed Kunkle once in the neck, and after that Curd jumped on Kunkle and—in Richardson's words—"started stabbing him everywhere, literally, thigh, legs, stomach, shoulder . . . , everywhere . . . ." As Curd was stabbing Kunkle, Richardson also stabbed Kunkle two more times. When Kunkle's body was found, he had

---

[1]Richardson's mother and stepfather later testified that they were willing to keep her in the home, but she chose not to abide by the rules of the household, rendering her unwelcome in the family home.

approximately thirty-seven stab wounds, the great majority of them inflicted by Curd. In a subsequent proffer, Richardson said that the stabbing was entirely Curd's plan and "would have never happened" otherwise. However, she acknowledged that Curd did not force her to go along with his plan.

Once Kunkle was dead, Richardson helped Curd move the body and clean up the crime scene. Curd was unsuccessful in finding the $2000 but retrieved Kunkle's billfold which contained an EBT card. Both Richardson and Curd then returned to the apartment where Richardson had been staying. They took showers and changed their clothes. Richardson continued to live in that apartment until she was arrested for Kunkle's murder months later.

Richardson was charged with first-degree murder. *See* Iowa Code § 707.2. Before trial, Richardson entered into a plea agreement with the State. The agreement called for Richardson to give a proffer statement and later to testify at Curd's first-degree murder trial. If the State concluded Richardson's proffer testimony was truthful, she would be permitted to plead guilty to aiding and abetting second-degree murder, a class "B" felony in violation of Iowa Code section 703.1 and section 707.3. If the State concluded the proffer statement was not truthful, there would be no plea agreement but the statement could not be used in the future for any purpose, including impeachment.

Richardson's proffer interview took place on February 5, 2014, in the presence of both of her counsel. The next day, Richardson pled guilty to second-degree murder pursuant to the plea agreement. There was no agreement between the State and Richardson on sentence. Richardson understood that the State would be seeking a fifty-year sentence with a mandatory thirty-five years of incarceration. She was

free to advocate for a much more lenient sentence. In the guilty plea colloquy, Richardson admitted that she had actively participated with Curd in stabbing Kunkle, that Kunkle died as a result of being stabbed, and that she had acted with malice aforethought.

A sentencing hearing took place on May 28, May 30, and June 6. The presentence investigation report recommended that Richardson be sentenced to fifty years in prison. The sentencing hearing revealed that Richardson had been raised by her mother as one of several siblings. When Richardson was ten, the family moved from the Chicago area to Iowa. At the age of thirteen, Richardson was raped. Richardson did not tell anyone because she did not trust anyone and did not think they would care.

Richardson's grandmother, with whom Richardson was quite close, passed away around the same time. Richardson began abusing marijuana and alcohol. Richardson's performance in school deteriorated, and she had to repeat seventh grade. In 2012, Richardson became increasingly involved with Curd, who was then eighteen and an older and somewhat controlling figure in her life. Richardson's mother and stepfather tried unsuccessfully to keep Richardson away from Curd. When Richardson was forced to leave the family home in the spring of 2013, she was homeless for a period of time before moving into the apartment where she was living at the time of Kunkle's murder.

At the sentencing hearing, Richardson showed considerable remorse for Kunkle's death. As the district court related,

> When asked how she felt about the situation, she tearfully replied, "I don't feel like a human. I feel like…I deserve to be down. I should have took his place. I should have stood there and said no to him, but because I was so selfish I stayed there. I caused all of this. And I can't change it. I can't make him come back and as much as I want to I

can't…take the pain away. I can say I'm sorry but sorry doesn't -- sorry don't change nothing." Ms. Richardson went on to testify that because of her actions, she wasn't even sure she wanted to ask for her freedom anymore. The Court finds these statements to be genuine and insightful, showing a great deal of remorse, not about being caught, but about the life she took from Mr. Kunkle.

At the sentencing hearing, Richardson also presented expert testimony from a forensic psychologist who opined that Richardson would not likely have perpetrated the offense by herself and had been subjected to numerous adverse developmental factors. These factors included her age at the time of the offense, transgenerational family dysfunction, residential transience, sexual assault, early teen onset of alcohol and drug abuse, and victimization in a predatory relationship with the codefendant. The psychologist concluded that Richardson had a good potential for establishing a constructive, contributing adulthood and a low likelihood of future serious violence.

The district court, in a lengthy July 18 sentencing decision, determined that continued confinement of Richardson was warranted but rejected a mandatory term of incarceration.[2] The court explained,

---

[2]The court made a record based on Richardson's age at the time of the offense and other *Miller/Ragland* factors. In *State v. Ragland*, we said that a sentencing court "must consider" the following *Miller* factors when a sentencing a juvenile to a possible sentence of life without parole:

> (1) the "chronological age" of the youth and the features of youth, including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the "family and home environment" that surrounded the youth; (3) "the circumstances of the . . . offense, including the extent of [the youth's] participation in the conduct and the way familial and peer pressures may have affected [the youth]"; (4) the "incompetencies associated with youth—for example, [the youth's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the youth's] incapacity to assist [the youth's] own attorneys"; and (5) "the possibility of rehabilitation."

836 N.W.2d 107, 115 n.6 (Iowa 2013) (alterations in original) (quoting *Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2468, 183 L. Ed. 2d. 407, 423 (2012)). We subsequently held that the rationale of *Miller* applies to all cases where a juvenile could

> [T]he Court believes that the programs, facilities and personnel available, together with the structured environment that would be provided within the Correctional System, will more effectively lead to Ms. Richardson's rehabilitation in a way that will eventually lead to her safe reentry into society. That said, the Court feels that an indeterminate term of years herein is appropriate, without any mandatory minimum term imposed. This will allow Ms. Richardson to embrace the services and treatment offered, and will allow her to prove herself to the parole board as time progresses.

The court thus sentenced Richardson to an indeterminate term of incarceration not to exceed fifty years with twenty-five years of the sentence to be suspended. The court also ordered Richardson to pay $150,000 in restitution to the estate of Ronald Kunkle "[p]ursuant to Iowa Code section 910.3B." Richardson did not raise any objection to the $150,000 restitution award at the time of sentencing.

Nonetheless, on appeal, Richardson challenges only the $150,000 restitution award. Richardson contends the sentencing court had discretion under recently enacted Iowa Code section 901.5(14) (2014) to impose a lower amount of restitution and should have exercised that discretion to reduce the award. Alternatively, Richardson maintains section 910.3B, to the extent it mandates a $150,000 restitution award, violates article I, section 17 of the Iowa Constitution both on its face as it pertains to all juvenile offenders and as applied to the particular circumstances of her case. Richardson argues that a recent decision from the United States Supreme Court and subsequent decisions of our court sustain her claim that her age and culpability are necessary factors to consider in awarding restitution under the statute. *See Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *State*

---

be potentially sentenced to a mandatory minimum period of incarceration. *See State v. Lyle*, 854 N.W.2d 378, 400–01 (Iowa 2014).

*v. Lyle*, 854 N.W.2d 378 (Iowa 2014); *State v. Ragland*, 836 N.W.2d 107 (Iowa 2013); *State v. Pearson*, 836 N.W.2d 88 (Iowa 2013); *State v. Null*, 836 N.W.2d 41 (Iowa 2013).

We transferred Richardson's case to the court of appeals. Relying on its opinion in a companion case,[3] that court concluded Iowa Code section 901.5(14) does not authorize a lower restitution amount. The court reasoned that "sentence," as used in the statute, does not apply to restitution or fines. The court also rejected Richardson's facial challenge to section 910.3B. The court noted that "[n]either *Miller* nor Iowa's *Miller* progeny mention restitution or fines." Finally, the court rejected Richardson's as-applied challenge to her restitution order, finding the restitution not constitutionally excessive because it bore a reasonable relationship to the harm caused by the offense. On these grounds, the court of appeals affirmed the district court's restitution order.

We granted Richardson's application for further review.

**II. Standard of Review.**

"We review 'the trial court's application of pertinent sentencing statutes for corrections of error at law.'" *State v. Calvin*, 839 N.W.2d 181, 184 (Iowa 2013) (quoting *State v. Hawk*, 616 N.W.2d 527, 528 (Iowa 2000)). We review an allegedly unconstitutional sentence de novo. *Lyle*, 854 N.W.2d at 382.

**III. Analysis.**

**A. Does Iowa Code Section 901.5(14) Apply to Restitution Awards Under Section 910.3B?** We must first determine whether Iowa Code section 901.5(14) confers judicial discretion over what would otherwise be a mandatory restitution award under section 910.3B.

---

[3]*State v. Breeden*, No. 14–1789, 2015 WL 8389964 (Iowa Ct. App. Dec. 9, 2015).

In 1997, the general assembly enacted legislation relating to "restitution for death of victim." *See* 1997 Iowa Acts ch. 125, § 11 (codified at Iowa Code § 910.3B). That law now provides in part,

> In all criminal cases in which the offender is convicted of a felony in which the act or acts committed by the offender caused the death of another person, in addition to the amount determined to be payable and ordered to be paid to a victim for pecuniary damages, as defined under section 910.1, and determined under section 910.3, the court shall also order the offender to pay at least one hundred fifty thousand dollars in restitution to the victim's estate . . . .

Iowa Code § 910.3B(1) (2017).[4]

> Interpreting this statute in *State v. Klawonn*, we held,

> [T]he context of section 910.3B(1) clearly indicates the award is mandatory once the offender's felonious actions result in the loss of human life. The use of the word "shall" in section 910.3B(1) was intended to create not merely the power to impose, but rather the duty upon the sentencing court to impose a restitution award payable to the estate of at least $150,000.

609 N.W.2d 515, 522 (Iowa 2000).[5]

Prior to 2013, there was no question that juveniles whose cases were transferred into district court and who were convicted of crimes as adults were subject to the same restitution obligations as adults. *See* Iowa Code § 910.2(1) (2011) ("In all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered, the sentencing court shall order that restitution be made by each offender to the victims of the offender's

---

[4]All references to the Iowa Code are to the 2017 Code unless otherwise noted.

[5]In 2000, we said that we were "unable to find any state in the nation with a similar statute for restitution." *State v. Izzolena*, 609 N.W.2d 541, 550 (Iowa 2000). In 2009, Alabama enacted a law requiring mandatory minimum restitution of $50,000 for certain types of murder. *See* Ala. Code § 15-18-68(b)(1) (Westlaw through Act 2016–485 of 2016 1st Special Sess.).

criminal activities . . . ."); *id.* § 915.100(2)(*a*) ("In all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered, the sentencing court shall order that restitution be made by each offender to victims of the offender's criminal activities."). Iowa law drew a distinction between criminal cases, where restitution must be ordered, and juvenile delinquency proceedings, where it *may* be ordered. *Compare id.* § 915.100(2)(*a*), *with id.* § 232.52(2)(*a*)(2), *and id.* § 915.100(2)(*b*).

However, in 2013, the legislature enacted new sentencing legislation relating to juveniles. *See* 2013 Iowa Acts ch. 42, § 14 (codified at Iowa Code § 901.5(14) (2014)). That law provides,

> Notwithstanding any provision in section 907.3 or any other provision of law prescribing a mandatory minimum sentence for the offense, if the defendant, other than a child being prosecuted as a youthful offender, is guilty of a public offense other than a class "A" felony, and was under the age of eighteen at the time the offense was committed, the court may suspend the sentence in whole or in part, including any mandatory minimum sentence, or with the consent of the defendant, defer judgment or sentence, and place the defendant on probation upon such conditions as the court may require.

Iowa Code § 901.5(14).

When Richardson was sentenced below, the district court ordered her to make restitution of $150,000 to Kunkle's estate in accordance with Iowa Code section 910.3B(1). Richardson did not raise the potential applicability of the 2013 legislation at that time, nor did she object on constitutional grounds to mandatory restitution under section 910.3B(1). However, the rule of error preservation "is not ordinarily applicable to void, illegal or procedurally defective sentences." *State v. Thomas*, 520 N.W.2d 311, 313 (Iowa Ct. App. 1994).

Richardson now argues on appeal that the district court failed to recognize it had discretion conferred by Iowa Code section 901.5(14) to reduce the amount of the restitution award. In Richardson's view, the phrase "mandatory minimum sentence" as used in section 901.5(14) includes the minimum restitution required by section 910.3B(1). And, according to Richardson, the phrase "suspend the sentence in whole or in part" in section 901.5(14) provides sentencing judges with authority to impose a lower restitution amount than section 910.3B(1) would otherwise require. Richardson thus contends that the 2013 legislation effectively amended section 910.3B(1) as to juvenile homicide offenders. The State, on the other hand, maintains that "sentence" as used throughout section 901.5(14) does not include restitution. Hence, the State urges that the 2013 legislation had no effect on section 910.3B(1).

The fighting issue before us is largely the meaning of "sentence" as used in Iowa Code section 901.5(14). Our first step in statutory interpretation is to determine whether the language is ambiguous. *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 71–72 (Iowa 2015). If the language is unambiguous, our inquiry stops there. *State v. Starkey*, 437 N.W.2d 573, 575 (Iowa 1989). "A statute is ambiguous if reasonable minds differ or are uncertain as to the meaning of the statute." *Rhoades v. State*, 880 N.W.2d 431, 446 (Iowa 2016). "We determine whether a statute is ambiguous or unambiguous by reading the statute as a whole." *State v. DeSimone*, 839 N.W.2d 660, 666 (Iowa 2013). "[T]he determination of whether a statute is ambiguous does not necessarily rest on close analysis of a handful of words or a phrase utilized by the legislature, but involves consideration of the language in context." *Rhoades*, 880 N.W.2d at 446.

The wording of section 901.5(14) itself offers limited guidance as to whether "sentence" includes a restitution award. This provision does authorize a court to suspend "the sentence" in whole or in part, "including any mandatory minimum sentence." Iowa Code § 901.5(14). This provision also authorizes a court to "defer judgment or sentence" and place the defendant on probation. *Id.*

Elsewhere in Iowa Code section 901.5, though, references to "sentence" include fines *but not* restitution. For example, section 901.5(1) empowers the district court to "defer judgment and sentence" in accordance with chapter 907, while section 901.5(3) authorizes the court to "suspend the execution of the sentence" as provided in chapter 907. *See id.* § 901.5(1), (3). Additionally, section 901.5(5) allows the court to "defer the sentence" when authorized by section 907.3. *See id.* § 901.5(5). Section 907.3—referenced by these subsections—is the section entitled, "Deferred judgment, deferred sentence, or suspended sentence." *See id.* § 907.3.

We long ago held restitution is mandatory even when the foregoing sentencing options are exercised. *See State v. Kluesner*, 389 N.W.2d 370, 372–73 (Iowa 1986) (holding that restitution is mandatory even when the sentencing options under section 907.3 are exercised). Because the authority to defer judgment or sentence does not include the authority to defer restitution, we have also held that an application for discretionary review is the proper way to challenge a restitution order in a deferred judgment case. *State v. Stessman*, 460 N.W.2d 461, 464 (Iowa 1990). Hence, the word "sentence" as used in other parts of section 901.5 does not include restitution.

We can draw other lessons from examining Iowa Code section 901.5 as a whole. The section introduces *all* of its numbered

subsections—including section 901.5(14)—with the following clause: "At the time fixed by the court for pronouncement of judgment and sentence, the court shall act accordingly[.]" Iowa Code § 901.5. Section 901.5(14) is simply the fourteenth in a list of numbered items following this preamble. And as the preamble states, each item in the list is something that, if ordered, shall be ordered at the time of "pronouncement of judgment and sentence." *Id.*

Restitution is not mentioned anywhere within the list. Instead, another section in another chapter—i.e., section 910.3—covers the process for ordering restitution. And in contrast to section 901.5's preamble, section 910.3 indicates that restitution may be ordered "[a]t the time of sentencing *or at a later date to be determined by the court.*" *Id.* § 910.3 (emphasis added).[6] This critical timing difference further supports the proposition that section 901.5(14), like the rest of section 901.5, has no bearing on restitution and concerns nonrestitution matters that must be ordered at the time of pronouncement of judgment and sentence, not later.

In sum, "sentence" as used in Iowa Code sections 901.5(1), 901.5(3), and 901.5(5) excludes restitution. One can therefore reasonably say that the same term appearing in section 901.5(14)— which has similar references to suspending the sentence or deferring judgment or sentence—does not include restitution, either. Going further, section 901.5 matters must occur at the time of pronouncement of judgment and sentence. Restitution determinations, on the other

---

[6]Even though the $150,000 award in homicide cases is mandatory, it is a minimum, and a victim's family might seek to claim more, necessitating a later hearing. *See* Iowa Code § 910.3B(1).

hand, can occur later. This also supports a determination that section 901.5(14) does not address restitution.

Adding force to these arguments is certain language at the beginning of Iowa Code section 901.5(14) itself. This language reads, "Notwithstanding any provision in section 907.3 *or any other provision of law* prescribing a mandatory minimum sentence for the offense . . . ." *Id.* § 901.5(14) (emphasis added). As we have already noted, the cross-referenced provision, section 907.3, relates to deferred judgments, deferred sentences, and suspended sentences. *See id.* § 907.3. It identifies certain circumstances including forcible felonies where incarceration is mandatory and the deferred and suspended options are not available. But as discussed above, section 907.3 has no bearing on restitution; that is a separate overriding requirement unaffected by section 907.3. Thus, if one applies the canons of *ejusdem generis* and *noscitur a sociis,* one would read "any other provision of law prescribing a minimum sentence" to refer to *similar kinds of provisions* as section 907.3. *See In re Estate of Sampson,* 838 N.W.2d 663, 670 (Iowa 2013) (discussing *ejusdem generis*); *Mall Real Estate, L.L.C. v. City of Hamburg,* 818 N.W.2d 190, 199 (2012) (discussing *noscitur a sociis*). In that event, section 901.5(14) would not apply to restitution.

Additionally, Iowa Code section 901.5(14) refers to "a mandatory minimum sentence *for the offense.*" Iowa Code § 901.5(14) (emphasis added). Yet the restitution under Iowa Code section 910.3B is not tied to a particular offense or group of offenses. Rather, it requires an offense (namely a felony) and that "the act or acts committed by the offender caused the death of another person." Iowa Code § 910.3B(1).

Nonetheless, it is true that the Iowa Code does not define "sentence" anywhere. We have said that a sentence is "[t]he judgment

formally pronounced by the court or judge upon the defendant . . . imposing the punishment to be inflicted." *Klouda v. Sixth Judicial Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 261 (Iowa 2002) (alteration in original) (quoting *Sentence, Black's Law Dictionary* (6th ed. 1990)); *see also* 4 Charles E. Torcia, *Wharton's Criminal Procedure* § 535, at 424 (13th ed. 1992) (defining sentence as "the pronouncement by a court of the penalty imposed upon the defendant after a judgment of guilty"). As we discuss in the next part of our opinion, a restitution award under section 910.3B is partly punitive. Therefore, depending on the context, restitution could be considered part of the "sentence."

We think we have said enough to demonstrate that reasonable minds can differ as to whether "sentence" as used in section 901.5(14) includes a restitution award. It would not be surprising that the meaning of "sentence" depends on the context. We have said the same thing repeatedly about the meaning of "conviction." *See, e.g., State v. Deng Kon Tong*, 805 N.W.2d 599, 601–02 (Iowa 2011); *Daughenbaugh v. State*, 805 N.W.2d 591, 597, 599 (Iowa 2011). Because section 901.5(14) is ambiguous, we must employ additional tools of statutory interpretation to ascertain statutory meaning.

One possible tool is to examine how the phrase "mandatory minimum sentence" is used elsewhere in the Iowa Code. Does it include restitution in other contexts? Notably, *Black's Law Dictionary* defines "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty" or "the punishment imposed on a criminal wrongdoer" but defines "minimum sentence" as "[t]he least amount of time that a convicted criminal must serve in prison before becoming eligible for parole." *Sentence, Black's Law Dictionary* (10th ed. 2014); *Minimum Sentence, Black's Law Dictionary*; *see State v. Hoyman,*

863 N.W.2d 1, 11 (Iowa 2015) (citing *Black's Law Dictionary* in interpreting a criminal statute).

Other provisions of the Iowa Code use "mandatory minimum sentence" to refer to a mandatory period of incarceration. *See* Iowa Code § 124.413 (section entitled "Mandatory minimum sentence"); *id.* § 232.45(14)(*a*) (cross-referencing section 124.413); *id.* § 462A.14(3)(*a*) ("mandatory minimum sentence of incarceration"); *id.* § 901.5(7) ("The court shall inform the defendant of the mandatory minimum sentence, if one is applicable."); *id.* § 901.10(2) (allowing reductions in the "mandatory minimum sentence" for certain offenses if the defendant pleads guilty or cooperates in the prosecution of other persons); *id.* § 903A.2(5) (addressing the interaction between earned time accrued by inmates and "any mandatory minimum sentence"); *id.* § 903A.5(1) (addressing the interaction between earned time and certain "mandatory minimum sentence[s]"); *id.* § 904.902 ("An inmate serving a mandatory minimum sentence of one year or more . . . ."); *id.* § 906.5(1)(*a*) (stating that the board of parole does not need to annually review the status of a person "serving a mandatory minimum sentence"); *id.* § 907.3(1)(*a*)(7) ("a mandatory minimum sentence must be served or mandatory minimum fine must be paid"); *id.* § 907.3(2)(*a*)(3) ("a mandatory minimum sentence must be served or mandatory minimum fine must be paid"); *id.* § 907.3(3)(*c*) ("[a] mandatory minimum sentence of incarceration"); *id.* § 907.3(3)(*f*) ("[a] mandatory minimum sentence or fine imposed for a violation of section 462A.14").

Besides the foregoing provisions, we are aware of one other instance where our Code uses the phrase "mandatory minimum sentence." This is section 907.3A, which relates to youthful offenders. Until 2013, this section read in part as follows:

> Notwithstanding any provision of the Code which prescribes a mandatory minimum sentence for the offense committed by the youthful offender, following transfer of the youthful offender from the juvenile court back to the court having jurisdiction over the criminal proceedings involving the youthful offender, the court may continue the youthful offender deferred sentence or enter a sentence, which may be a suspended sentence.

*Id.* § 907.3A(3) (2013). Section 907.3A addressed what happened to a "youthful offender" when he or she turned eighteen and was returned to the jurisdiction of the district court. *See State v. Iowa Dist. Ct.*, 616 N.W.2d 575, 580 (Iowa 2000) (discussing this section). A juvenile charged with committing, say, a forcible felony when under the age of sixteen could be waived to district court to be prosecuted as a "youthful offender." *See id.* If the juvenile were convicted in district court, sentence would be deferred and supervision would be transferred back to juvenile court. *See id.* Hence, section 907.3A described what would occur if the juvenile were returned to the district court after aging out of the juvenile system.

The same 2013 legislation that added Iowa Code section 901.5(14) also amended section 907.3A on youthful offenders to read as follows:

> Notwithstanding any provision of the Code which prescribes a mandatory minimum sentence for the offense committed by the youthful offender, following transfer of the youthful offender from the juvenile court back to the court having jurisdiction over the criminal proceedings involving the youthful offender, the court shall order one of the following sentencing options:
>
> (1) Defer judgment and place the youthful offender on probation, upon the consent of the youthful offender.
>
> (2) Defer the sentence and place the youthful offender on probation upon such terms and conditions as the court may require.
>
> (3) Suspend the sentence and place the youthful offender on probation upon such terms and conditions as the court may require.

(4) A term of confinement as prescribed by law for the offense.

(5) Discharge the youthful offender from youthful offender status and terminate the sentence.

*Id.* § 907.3A(3)(*a*) (2014); *see* 2013 Iowa Acts ch. 42, § 15. The 2013 legislation thus expanded the sentencing options available for the youthful offender who turned eighteen, "[n]otwithstanding any provision of the Code which prescribes a mandatory minimum sentence for the offense committed by the youthful offender." Iowa Code § 907.3A(3)(*a*). But the options have to do with the offender's liberty. That is why "confinement" alone—not "confinement" and "restitution," for example— is listed as one of the options. In other words, "mandatory minimum sentence" as used in the very next section of the 2013 legislation—i.e., section 15 rather than section 14—refers to incarceration because this section describes four alternatives to incarceration and one nonalternative.

It is logical to conclude the legislature intended "mandatory minimum sentence," when used in consecutive sections of the same 2013 law, to have the same meaning. "When the same term appears multiple times in the same statute, it should have the same meaning each time." *State v. Paye*, 865 N.W.2d 1, 7 (Iowa 2015); *see also Tiano v. Palmer*, 621 N.W.2d 420, 423 (Iowa 2001) ("When the same word or term is used in different statutory sections that are similar in purpose, they will be given a consistent meaning.").

For all these reasons, we have decided that Iowa Code section 901.5(14) does not authorize the district court to modify a restitution award otherwise required by section 910.3B(1). Restitution under chapter 910 is mandatory, may be imposed later, and operates independently from the section 901.5 sentencing options available to a

court. Because Iowa Code section 901.5(14) does not apply to restitution under section 910.3B, the district court lacked statutory discretion to reduce Richardson's payment to Kunkle's estate below $150,000.[7]

**B. Facial Challenge to Section 910.3B.** We next turn to Richardson's legal challenge to the constitutionality of Iowa Code section 910.3B as it relates to all juvenile homicide offenders. She argues the statute violates article I, section 17 of the Iowa Constitution to the extent it imposes mandatory restitution on a juvenile homicide offender without a court first considering the *Miller/Ragland* factors. Article I, section 17 provides in part that "excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted." Iowa Const. art. I, § 17. Richardson asserts a facial constitutional challenge under both clauses.

1. *Cruel and unusual punishment challenge.* We have not had the opportunity to determine whether a mandatory restitution award constitutes cruel and unusual punishment prohibited by article I, section 17 of the Iowa Constitution. In *State v. Izzolena,* we held that Iowa Code section 910.3B did not on its face violate the Excessive Fines Clause or the Due Process Clause of the United States or Iowa Constitutions. 609 N.W.2d 541, 551, 553 (Iowa 2000). However, that case did not involve a challenge of unconstitutionality under the cruel and unusual punishment clause. *See id.* at 546–47. Two years ago, in *Lyle*, we held that "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of our constitution." 854 N.W.2d at 400.

---

[7]We acknowledge that under the rule of lenity, criminal statutes are strictly construed. *See Hoyman*, 863 N.W.2d at 18. Here, this rule of construction does not overcome the other reasons we have detailed for construing Iowa Code section 901.5(14) as not covering the topic of restitution.

Richardson asks us to extend this holding to mandatory minimum restitution amounts.

We do not believe the cruel and unusual punishment clause is at issue here. As we pointed out in *Izzolena,* the excessive fines clause "limit[s] the government's power to punish" through monetary exactions. 609 N.W.2d at 548. If the cruel and unusual punishment clause also limited fines, the excessive fines clause would be duplicative and unneeded.[8]

In Eighth Amendment jurisprudence, the two constitutional clauses are not interchangeable. *See Alexander v. United States,* 509 U.S. 544, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993). In *Alexander,* the petitioner challenged the forfeiture of his businesses and property as part of a criminal proceeding. *Id.* at 546, 113 S. Ct. at 2769, 125 L. Ed. 2d at 447–48. He claimed the forfeiture violated the Eighth Amendment "either as a 'cruel and unusual punishment' or as an 'excessive fine.'" *Id.* at 558, 113 S. Ct. at 2775, 125 L. Ed. 2d at 455. However, the Court distinguished the two claims, noting that the court of appeals had incorrectly "lumped the two together." *Id.* The Court reasoned,

> Unlike the Cruel and Unusual Punishments Clause, which is concerned with matters such as the duration or conditions of confinement, "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash or

---

[8]Richardson cites a 1799 Virginia case where the court struck down a joint fine assessed against three defendants convicted of assault and battery. *See Jones v. Commonwealth,* 5 Va. (1 Call) 555 (1799). According to Richardson, this case illustrates that a disproportionate fine can violate *both* the excessive fines clause *and* the cruel and unusual punishment clause. We believe Richardson's reading of the Virginia case, which she borrows from a law review article, is mistaken. Although the Virginia opinion is a bit difficult for us to read today, because in nineteenth-century style it is a tag-team of the views of three judges, no view is expressed therein that the joint fine specifically violated the cruel and unusual punishment clause. One judge said it was an excessive fine, *id.* at 556–57, another said it simply violated "the bill of rights" without specifying the clause, *id.* at 557–59, and a third judge dissented, *id.* at 560.

> in kind, as punishment for some offense." The *in personam* criminal forfeiture at issue here is clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional "fine." Accordingly, the forfeiture in this case should be analyzed under the Excessive Fines Clause.

*Id.* at 558–59, 113 S. Ct. at 2775–76, 125 L. Ed. 2d at 455 (alteration in original) (citations omitted) (quoting *Austin v. United States*, 509 U.S. 602, 609–10, 113 S. Ct. 2801, 2805–06, 125 L. Ed. 2d 488, 497 (1993)).

While we "jealously guard our authority to interpret the Iowa Constitution independently," *In re J.C.*, 877 N.W.2d 447, 458 (Iowa 2016), we read article I, section 17 in the same dual fashion. The text of article I, section 17—like that of the similarly worded Eighth Amendment—observes a distinction between punishment of a physical nature, such as confinement, and punitive financial measures. Therefore, we do not believe that Iowa Code section 910.3B restitution can amount to "cruel and unusual punishment."

2. *Excessive fines challenge.* We thus turn to whether mandatory $150,000 restitution as applied to a juvenile homicide offender violates the excessive fines clause of article I, section 17. In *Izzolena*, as noted, we rejected a facial challenge to Iowa Code section 910.3B brought by a defendant who had been ordered to pay $150,000 in victim restitution under section 910.3B following a conviction for unintentionally causing the death of another by operating a motor vehicle in a reckless manner. 609 N.W.2d at 545, 551. We first determined that the restitution award under section 910.3B has "several punitive elements" and therefore should be considered a "fine" within the meaning of both the Eighth Amendment and article I, section 17. *Id.* at 548–49. However, we held the mandatory $150,000 award was not unconstitutionally "excessive." *Id.* at 551.

In *Izzolena* we pointed out that the statute "applies only to felonious acts resulting in death." *Id.* at 550. The mandatory restitution provided by the statute "could not be imposed in a case involving an unintentional or negligent offender." *Id.* We also recognized that the statute "only applies to offenders who committed a crime which caused the death of another human." *Id.* "The seriousness of this harm, in the final analysis, is unmatched in the broad spectrum of crimes." *Id.* We further observed that other criminal laws in Iowa authorized "enormous fines" which "help[ed] place the penalty imposed by section 910.3B in context." *Id.*; *see also State v. Di Paglia*, 247 Iowa 79, 85–86, 71 N.W.2d 601, 604–05 (1955) (finding that a fine of up to $10,000 for bribery in athletic contests—the equivalent of approximately $64,000 in 2000—did not violate article I, section 17). Ultimately, in *Izzolena*, we said,

> Considering the nature of the offense, resulting harm, and the great deference afforded the legislature, we conclude section 910.3B does not on its face violate the Excessive Fines Clause of our state and federal constitutions. The minimum restitution award of $150,000 is high, but not grossly disproportionate to the gravity of the offenses covered under the statute.

609 N.W.2d at 551.

Our analysis in *Izzolena* under both the United States and the Iowa Constitutions drew upon recent United States Supreme Court precedent. In *United States v. Bajakajian*, the United States Supreme Court had held it would violate the Eighth Amendment to order a defendant to forfeit all of the $357,144 he failed to report in violation of federal law considering that his crime was "solely a reporting offense," he would have been able "to transport the currency out of the country so long as he reported it," he was not in the class of persons targeted by the statute, and the harm caused by his actions was "minimal" and resulted

in "no loss to the public fisc."  524 U.S. 321, 337–39, 118 S. Ct. 2028, 2038–39, 141 L. Ed. 2d 314, 331–32 (1998).  According to the *Bajakajian* Court, a forfeiture that was "grossly disproportional to the gravity of the defendant's offense" would be unconstitutional.  *Id.* at 337, 118 S. Ct. at 2038, 141 L. Ed. 2d at 329.

We adopted that standard in *Izzolena* for restitution.  609 N.W.2d at 549.  Therefore, we concluded a restitution award with punitive characteristics would violate the excessive fines clause of article I, section 17 if it was "grossly disproportional to the gravity of the defendant's offense."  *Id.* (quoting *Bajakajian,* 524 U.S. at 337, 118 S. Ct. at 2038, 141 L. Ed. 2d at 331).[9]

Richardson does not ask us to overrule *Izzolena* for adult defendants.  And we are not the only jurisdiction to uphold large mandatory fines in criminal cases.  *See, e.g., Gordon v. State,* 139 So. 3d 958, 959–60, 964 (Fla. Dist. Ct. App. 2014) (finding that mandatory fines of $100,000 and $500,000 imposed on an oxycodone trafficker did not violate the Eighth Amendment or article I, section 17 of the Florida Constitution); *Commonwealth v. Carela-Tolentino,* 48 A.3d 1221, 1222 (Pa. 2012) (mem.) (per curiam) (rejecting a federal and state excessive fines challenge to a mandatory $25,000 fine imposed in drug possession case).  However, Richardson urges that the legal landscape has changed as to juvenile homicide offenders since *Izzolena* was decided.  As we have already noted, in *Lyle,* we decided all mandatory minimum prison sentences for juvenile offenders violate the cruel and unusual

---

[9]Two years ago, the Supreme Court indicated that the punitive purposes of restitution may be sufficient to bring it within the purview of the Eighth Amendment's Excessive Fines Clause.  *Paroline v. United States,* 572 U.S. __, __, 134 S. Ct. 1710, 1726, 188 L. Ed. 2d 714, 732–33 (2014).

punishment clause of the Iowa Constitution. 854 N.W.2d at 400. Richardson maintains that under the rationale of *Lyle*, we should find a mandatory restitution award violates the excessive fines clause of the Iowa Constitution when imposed upon a juvenile homicide offender.

Richardson seizes on language in *Lyle* focusing upon the critical importance of sentencing discretion when sentencing juveniles: "[E]ven a short [mandatory] sentence . . . deprives the district court of discretion in crafting a punishment that serves the best interests of the child and of society." *Id.* at 402. "Article I, section 17 . . . prohibits the one-size-fits-all mandatory sentencing for juveniles." *Id.* at 403; *see also id.* at 401 ("The mandatory nature of the punishment establishes the constitutional violation.").

Yet, we believe that a mandatory period of incarceration is fundamentally different from the $150,000 restitution award at issue here. No court, to our knowledge, has applied *Miller* to fines or restitution. Imprisonment is qualitatively different because it incapacitates the individual and foreswears rehabilitation during the period of incarceration. *See id.* at 400. As we put it in *Lyle*, there is a sense in which imprisonment "write[s] off" the incarcerated individual during his or her term of incarceration. *Id.* at 401; *see also Pearson*, 836 N.W.2d at 96 (indicating that imprisonment deprives a juvenile of "leading a more normal adult life"). Thus, being incarcerated and owing a restitution debt are simply not comparable. One is a matter of liberty, the other a financial obligation.

Also, even if Iowa Code section 910.3B did not exist, juveniles who committed felonious homicides would still be subject to substantial financial obligations to their victims' heirs and estates. *See* Iowa Code §§ 611.20–.22; *id.* §§ 613.15–.15A; *Iowa Supreme Ct. Att'y Disciplinary*

*Bd. v. Ouderkirk*, 845 N.W.2d 31, 32–33 (Iowa 2014) (noting that a multimillion dollar wrongful-death judgment was recovered against an individual convicted of voluntary manslaughter).

In fact, payments on wrongful-death judgments and settlements are credited against section 910.3B restitution. *See* Iowa Code § 910.8 ("[A]ny restitution payment by the offender to a victim shall be set off against any judgment in favor of the victim in a civil action arising out of the same facts or event."). In *State v. Klawonn,* we held that the receipt of a $275,000 settlement by the victim's widow had the effect of canceling the defendant's $150,000 restitution obligation. *See* 688 N.W.2d 271, 275–76 (Iowa 2004). In *State v. Driscoll,* we held that civil settlement payments of $165,000 and $130,000 respectively should be credited against two restitution awards of $150,000 that had been ordered after the defendant committed homicide-by-vehicle resulting in two deaths. 839 N.W.2d 188, 189, 192 (Iowa 2013). The credited payments thereby eliminated all but $20,000 of the defendant's future restitution obligation. *Id.*

Furthermore, like section 910.3B restitution, wrongful-death judgments are not dischargeable in bankruptcy if based on "willful and malicious injury." *See* 11 U.S.C. § 523(a)(6) (2012); Iowa Code § 910.3B(1). In short, given the statutory coordination between civil damages and criminal restitution payments to avoid double recovery, *see Klawonn,* 688 N.W.2d at 275, and given that $150,000 is not extraordinary or even generous compensation for the death of a person, it would not be fair to equate it to a mandatory term of incarceration.[10]

---

[10]This is true even considering that Iowa Code section 910.3B allows separate recovery of "pecuniary damages." *See* Iowa Code § 910.3B(1).

In a sense, Iowa Code section 910.3B functions as an *alternative* to a wrongful-death action. Instead of retaining an attorney and bringing suit, a victim's family may prefer to rely on the minimum $150,000 restitution afforded by section 910.3B. It is entirely plausible that relatives of decedents allowed estates to be closed and the wrongful-death statute of limitations to run based on having received mandatory restitution awards.

Additionally, our justice system is replete with mandatory payments. In *Lyle,* we reasoned that the constitutional defect arose once the legislature mandated *any* period of incarceration for a juvenile who committed a crime. 854 N.W.2d at 401 ("The mandatory nature of the punishment establishes the constitutional violation."). Yet if we applied that logic to fines and restitution, a juvenile could not be subjected to any kind of financial penalty without a *Miller/Ragland* hearing. A *Miller/Ragland* hearing would be required, potentially, before the court could impose the scheduled fine for a speeding ticket on a juvenile.

Richardson makes a broad statement that "juvenile offenders are not in the same position as adult offenders to afford restitution payments due to an inability to achieve a comparable level of earning capacity." However, Richardson cites no data for this assertion. In fact, juvenile offenders like Richardson could be in a better position than comparable adult offenders to repay $150,000 restitution because of their younger age and the shorter period for which they will be incarcerated. *Cf. State v. Mayberry,* 415 N.W.2d 644, 645–47 (Iowa 1987) (rejecting a claim in a pre-Iowa Code section 910.3B first-degree murder case that the $60,828.53 restitution award against the defendant serving a life sentence was unconstitutionally excessive, even though calculations showed he would be unable to repay it in his lifetime).

Finally, a defendant is not required to pay the $150,000 restitution all at once. For each defendant, a restitution payment plan is prepared taking into account the defendant's income and other circumstances. *See* Iowa Code § 910.5(1)(*d*)(1). The payment plan can be amended as those circumstances change. *See id.* §§ 910.5(1)(*d*)(2), .7(2); *State v. Morris*, 858 N.W.2d 11, 16 & n.4 (Iowa 2015); *Izzolena*, 609 N.W.2d at 553 n.8; *Klawonn*, 609 N.W.2d at 519 ("The restitution statute permits the court to structure a plan of restitution to help diminish the collateral consequences of a civil judgment."). Thus, restitution is less one-size-fits-all than a cursory review of section 910.3B alone might suggest. *Cf. Lyle*, 854 N.W.2d at 403 (indicating that one-size-fits-all mandatory prison terms for juveniles are unconstitutional). It is true that a restitution payment plan requires regular periodic payments, but most Iowans carry ongoing financial obligations as part of their monthly lives, such as home loans, car loans, credit card debt, and student loans.[11]

In *Mayberry*, we took note of the flexibility afforded by Iowa Code section 910.7 in rejecting the defendant's Eighth Amendment excessive fines challenge: "[U]nder Iowa Code section 910.7, a plan of restitution is reviewable at any time during the period of probation, parole, or

---

[11]Richardson maintains that restitution is different because payment of restitution may affect voting rights. To be precise, under article II, section 5 of the Iowa Constitution, it is the conviction of an "infamous crime" that results in the loss of voting rights. *See Griffin v. Pate*, 884 N.W.2d 182, 185 (Iowa 2016). The governor has the ability to restore voting rights to persons convicted of infamous crimes through the pardoning power. *Id.* at 194. Different governors have followed different approaches in deciding when to use executive clemency to restore voting rights. *See id.* The current stated policy requires the person to discharge his or her sentence, but does not require him or her to have completed restitution. Instead, the person "must submit documentation demonstrating [he or she is] on a payment plan and [has] paid on these costs in good faith." *See FAQ - Voting*, Office of the Governor of Iowa, at 2 (Sept. 1, 2016), https://governor.iowa.gov/sites/default/files/documents/FAQ%20-%20Voting.pdf.

incarceration at the request of the offender or the party who prepared the plan of restitution." 415 N.W.2d at 647. This flexibility does not exist for civil wrongful-death judgments. They can be collected at any time in any amount, subject only to certain federal limits. *See, e.g.*, 15 U.S.C. § 1673(a) (limiting wage garnishment to twenty-five percent of disposable earnings).

We conclude section 910.3B does not on its face violate the excessive fines clause of the Iowa Constitution as it relates to juvenile homicide offenders. The $150,000 minimum restitution award is not grossly disproportionate to the offense for the reasons we previously discussed in *Izzolena*, and *Lyle* does not undermine that holding as to juveniles for the reasons discussed here. The diminished culpability of youth does not make it unconstitutional for the legislature to mandate a $150,000 restitution award (with credits for payments on civil judgments or civil settlements) against all persons who are convicted of a felony that results in the death of another.

**C. As-Applied Constitutional Challenge.** Lastly, Richardson raises an as-applied challenge to the $150,000 restitution ordered in her specific case. We previously addressed two such challenges the same day we decided *Izzolena*.

In *Klawonn*, we considered an as-applied challenge to a $150,000 restitution-for-death award brought by a twenty-four-year-old motorist who was convicted of involuntary manslaughter after driving seventy miles per hour in a forty-mile-per-hour zone. 609 N.W.2d at 517. Although the defendant's driving resulted in a fatal collision, no drugs or alcohol was involved. *Id.* The defendant nonetheless raised an as-applied challenge under both the Eighth Amendment and article I, section 17, asserting "the $150,000 restitution award . . . [was] excessive

in light of all of the underlying facts and circumstances of the offense." *Id.* at 518. We summarized the defendant's position as follows:

> [H]e claims the traffic offense of speeding does not justify punishment in the form of a restitution award of $150,000. Additionally, he asserts the award is excessive because it is not dischargeable in bankruptcy and will likely constitute a debilitating financial burden for the remainder of his life.

*Id.*

We found no constitutional violation. *Id.* at 519. We emphasized that the defendant had driven recklessly at seventy miles per hour on a city street. *Id.* at 518. We found that "the $150,000 restitution award is not grossly disproportionate to the gravity of the offense of involuntary manslaughter involving the reckless operation of a motor vehicle." *Id.* at 519.

In *State v. Rohm*, we likewise considered an as-applied challenge. 609 N.W.2d 504, 514 (Iowa 2000). There the defendant had purchased liquor to be served at a party hosted by her sons, aged nineteen and twenty, after one of them "persuaded her he would simply find another means to obtain liquor if she refused to purchase it." *Id.* at 507. A fourteen-year-old learning-disabled boy consumed the alcohol at the party and died of alcohol poisoning. *Id.* at 507, 509. The defendant was convicted of involuntary manslaughter and ordered to pay the $150,000 restitution award. *Id.* at 509.

As in *Klawonn*, we rejected the defendant's as-applied challenges to the restitution award under the Eighth Amendment and article I, section 17. We pointed out,

> Although her conduct was passive in the sense that she did not participate in the consumption of liquor with the minors, she was the source or supplier of the liquor. She supplied large amounts of liquor, some with very high levels of alcohol. There was also evidence to support a finding she

knew the liquor was being consumed. Whether passive or active, her conduct was extremely serious under the circumstances of the case.

*Id.* at 514.

Here, Richardson pled guilty to aiding and abetting a murder with malice aforethought. She knew that Curd's plan was to kill Kunkle, and she joined in and actively participated in the plan. She does not dispute that her acts were a cause of Kunkle's death. As in *Klawonn* and *Rohm*, the issue here is whether the $150,000 restitution award required by section 910.3B is grossly disproportionate to the gravity of the offense committed. *See Klawonn,* 609 N.W.2d at 518; *Rohm,* 609 N.W.2d at 514.

As we have already discussed, excessive-fine analysis primarily focuses "on the amount of the punishment as it relates to the particular circumstances of the offense." *Izzolena,* 609 N.W.2d at 551. "The 'fine' must bear some relationship to the gravity of the offense it is designed to punish." *Klawonn,* 609 N.W.2d at 518 (citing *Bajakajian,* 524 U.S. at 327, 118 S. Ct. at 2028, 141 L. Ed. 2d at 325). The issue is whether "the restitution award [is] grossly disproportionate to the offense." *Rohm,* 609 N.W.2d at 514.

In *In re Property Seized from Terrell,* we addressed an excessive fines claim in the context of a juvenile delinquency proceeding. *See* 639 N.W.2d 18 (Iowa 2002). In that case, a youth was adjudicated a delinquent in connection with the attempted burglary of stereo equipment from a parked car and possession of burglary tools. *Id.* at 19. The state brought an action to forfeit the vehicle the juvenile was using. *Id.* As a result, the youth lost his own vehicle that he claimed to be worth between $8850 and $9050. *Id.* at 21. We rejected the juvenile's claim this was an unconstitutionally excessive fine under the Eighth Amendment and article I, section 17. *Id.* at 19 & n.1, 21–22. We found

the youth had failed to establish even a prima facie case that the loss of his vehicle, when compared to the severity of his offenses, was grossly disproportionate. *Id.* at 22.

Richardson argues her age at the time of the offense, her history of substance abuse, the rape she suffered, her difficult home life, and her relationship with Curd are all "circumstances of the offense" that make the $150,000 restitution award disproportionate to the gravity of the offense. Nonetheless, the offense committed by Richardson was extremely serious in nature. Richardson admitted she stabbed Kunkle with a steak knife once in his neck and twice in the side as part of a plan to kill him for cash. Richardson also admitted to helping Curd conceal Kunkle's body in the apartment and destroying evidence of the couple's involvement. In pleading guilty to aiding and abetting second-degree murder, Richardson acknowledged acting intentionally with malice aforethought in killing Kunkle. Although Richardson was a juvenile and we have no reason to question her psychologist's testimony that she would not have perpetrated this killing on her own, she intentionally participated in the taking of a human life. By contrast, the conduct involved in *Klawonn* and *Rohm* was merely reckless.

Even after taking into account Richardson's age and her personal history as aspects of the gravity of her offense, on this record we do not find the $150,000 restitution award unconstitutionally excessive in violation of the Iowa Constitution.

Our record does not include an actual restitution payment plan. We do not consider today whether Iowa Code section 910.3B could be unconstitutional as applied to a juvenile homicide offender because of her specific payment plan. We have previously held that ability-to-pay challenges to restitution are premature until the defendant has

exhausted the modification remedy afforded by Iowa Code section 910.7. *State v. Jackson*, 601 N.W.2d 354, 357 (Iowa 1999). On a related note, we are also not addressing the possibility that a juvenile homicide offender could show a restitution payment plan so deprives her of the opportunity for rehabilitation as to undermine the guarantees of *Miller*, *Lyle*, *Ragland*, *Pearson*, and *Null*. *See Miller*, 567 U.S. at __, 132 S. Ct. at 2470, 183 L. Ed. 2d at 423–24; *Lyle*, 854 N.W.2d at 399–400; *Ragland*, 836 N.W.2d at 121; *Pearson*, 836 N.W.2d at 96; *Null*, 836 N.W.2d at 71–72.

**IV. Conclusion.**

For the reasons stated above, we affirm the decision of the court of appeals and the judgment and sentence of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT AND SENTENCE OF DISTRICT COURT AFFIRMED.**

All justices concur except Appel, Wiggins, and Hecht, JJ., who dissent.

#14–1174, *State v. Richardson*

**APPEL, Justice (dissenting).**

I respectfully dissent. For the reasons expressed below, I would remand this case to the district court for consideration of the potentially reduced culpability of a juvenile offender before the imposition of punishment through restitution under Iowa Code section 910.3B (2013).

**I. Applicability of *Ragland–Null–Lyle* to a Challenge to the Amount of Restitution in a Criminal Case Under the Excessive Fines Clause of Article I, Section 17 of the Iowa Constitution.**

**A. Introduction.** In this case, Daimonay Richardson pled guilty to aiding and abetting second-degree murder in connection with the death of Ronald Kunkle. At the time of the murder, Richardson was a troubled fifteen-year-old girl. At the time of the crime, her father had abandoned her, and for many years, her main caregiver was her maternal grandmother. She was sexually assaulted at the age of twelve, had to repeat seventh grade, and began to use drugs and alcohol at an early age. The facts surrounding the crime are outlined in the majority opinion. Richardson's codefendant, D'Anthony Curd, was four years older than Richardson and encouraged her to skip school and use drugs. She assisted Curd in stabbing Ronald Kunkle to death while under the influence of drugs.

At the sentencing hearing, Richardson presented testimony from Dr. Mark Cunningham, a forensic psychologist. He testified to the presence of twenty-one adverse developmental factors that reduced Richardson's moral culpability for the crime:

1. Age 15 at time of the offense.

2. Trans-generational family dysfunction.

3. Hereditary predisposition to alcohol and drug use.

4. Alcoholism of father.

5. Abandonment [by] father.

6. Failure of mother to effectively bond to her.

7. Learning disability.

8. Emotional and supervisory neglect.

9. Amputation of relationship with psychological parent [grandmother] as a pre-adolescent.

10. Death of psychological parent.

11. Residential transience.

12. Household transitions and instability.

13. Sexual assault.

14. Premature sexualization.

15. Target of peer harassment and bullying.

16. Early teen onset of alcohol and drug abuse.

17. Inadequate mental health interventions.

18. Explosion from maternal household.

19. Victimization in predatory relationship with codefendant.

20. Domination by the predatory codefendant in the murder.

21. Heavy substance abuse, including synthetic cannabinoid proximate to offense.

The district court entered an order awarding restitution in the amount of $150,000 to the estate of the victim under Iowa Code section 910.3B.

**B. Overview of Legal Issue.** In a series of cases, we have held the district court must consider the limited culpability of juvenile offenders in imposing criminal sentences. *State v. Lyle*, 854 N.W.2d 378, 402 (Iowa 2014); *State v. Ragland*, 836 N.W.2d 107, 122 (Iowa 2013); *State v. Null*, 836 N.W.2d 41, 72 (Iowa 2013). These cases generally

incorporate and expand upon the teachings of the United States Supreme Court in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

In *Miller*, the United States Supreme Court noted that children were "constitutionally different" from adults for purposes of sentencing. 567 U.S. at ___, 132 S. Ct. at 2464, 183 L. Ed. 2d at 418. According to the Court, children have a "lack of maturity" and an "underdeveloped sense of responsibility," leading to "recklessness, impulsivity, and heedless risk-taking." *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 569, 125 S. Ct. 1183, 1195, 161 L. Ed. 2d 1, 21 (2005)). Further, the United States Supreme Court emphasized that children are more vulnerable to " 'negative influences and outside pressures,' including from their family and peers." *Id.* (quoting *Roper*, 543 U.S. at 569, 125 S. Ct. at 1195, 161 L. Ed. 2d at 22). Finally, the Court noted that a child's character is not as well formed as an adult's and thus his actions are "less likely to be 'evidence of irretrievabl[e] deprav[ity].' " *Id.* (quoting *Roper*, 543 U.S. at 570, 125 S. Ct. at 1195, 161 L. Ed. 2d at 22)).

Our cases, however, have all arisen in the context of a cruel and unusual punishment challenge to a term of imprisonment. This case raises the interesting question of whether the principles of our cruel and unusual punishment cases involving juvenile offenders apply to a challenge under the excessive fines clause of the Iowa Constitution— article I, section 17—to an award of restitution in a criminal case under Iowa Code section 910.3B.

Iowa has a two-tiered restitution regime that applies in criminal cases. Under Iowa Code section 910.2, an offender is required to make restitution to the victims of crimes. The damages recoverable under Iowa Code section 910.2 include pecuniary damages, which are,

all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium.

Iowa Code § 910.1(3).

In addition, Iowa Code section 910.3B requires an offender convicted of a felony resulting in death to pay at least $150,000 in restitution to the victim's estate. The restitution award under this section does not impede or supersede a civil action for damages arising out of the same facts, but is an offset against any judgment in favor of the victim. *See id.* §§ 910.3B(2), .8.

In *State v. Izzolena*, we considered a challenge to Iowa Code section 910.3B on the ground that the imposition of a $150,000 restitution award amounted to an unconstitutional excessive fine under the Eighth Amendment of the United States Constitution and article I, section 17 of the Iowa Constitution. 609 N.W.2d 541, 545 (Iowa 2000). In *Izzolena*, the offender was found guilty of vehicular homicide and the district court imposed a $150,000 restitution award under Iowa Code section 910.3B. *Id.*

We first considered whether the Excessive Fines Clause was applicable to restitution under Iowa Code section 910.3B. *Id.* at 547. We canvassed the history of the Excessive Fines Clause, concluding that the framers of the United States Constitution were concerned with limiting the power of the government to punish. *Id.* at 549. We noted that our cases stated that restitution was not designed solely to compensate victims, but to rehabilitate and instill responsibility in criminal offenders. *Id.* at 548; *see also State v. Kluesner*, 389 N.W.2d 370, 372 (Iowa 1986); *State v. Haines*, 360 N.W.2d 791, 795 (Iowa 1985). We further noted that Iowa Code section 910.3B revealed punitive purposes. *Izzolena*, 609

N.W.2d at 548. We noted that under the statute, no proof was required to support damages. *Id.* at 548–49. We also noted that an award of restitution is not dischargeable in bankruptcy, suggesting the punitive nature of the award. *Id.* at 549.

We thus held that although restitution might serve a remedial purpose, it was still subject to the Excessive Fines Clause because it served in part to punish. *Id.* We stated that under the Excessive Fines Clause, the test was whether the penalty is "grossly disproportional to the gravity of the defendant's offense." *Id.* (quoting *United States v. Bajakajian,* 524 U.S. 321, 337, 118 S. Ct. 2028, 2038, 141 L. Ed. 2d 314, 331 (1998)).

We concluded, however, that the imposition of a $150,000 restitution award on its face did not violate the Excessive Fines Clause. *Id.* at 551. We declined to address the question of whether the punishment was constitutional under the facts of the case as the argument was not raised in the district court or on appeal. *Id.*

Three members of the *Izzolena* court dissented. The dissenters discussed whether the fine imposed would deprive the defendant of a livelihood. *Id.* at 555 (Lavorato, J., dissenting). They stated that the proper course was to remand the matter to the district court for a "meaningful hearing." *Id.* at 556 (emphasis omitted).

**C. Application to Richardson.** There are two potential attacks to the $150,000 fine in this case. The first line of attack is whether the fine imposed deprives Richardson of a livelihood. This is a consequential attack that concerns itself only with the amount of the award. There is substantial support for this line of attack in the literature and caselaw. Even offenders who commit serious criminal offenses cannot become wage slaves upon their release or encounter financial burdens so

onerous that the offender ends up with an extended term of incarceration arising from inability to pay an excessive fine. *See* Cortney E. Lollar, *Punitive Compensation*, 51 Tulsa L. Rev. 99, 100 (2015) (decrying situations when criminal defendants end up being incarcerated for a longer period of time than for their original sentence due to a failure to pay a restitution obligation); Nicholas M. McLean, *Livelihood, Ability to Pay, and the Original Meaning of the Excessive Fines Clause*, 40 Hastings Const. L.Q. 833, 895–96 (2013) (suggesting excessive-fines test regarding livelihood includes ability to pay in light of earning capacity, financial resources, and burdens fine places on defendant and his dependents).

To the extent that Richardson seeks to raise a consequential type of claim based on deprivation of the ability to earn a livelihood, I agree that it should be deferred until Richardson is released from prison and until the terms of any restitution order are known. We have recognized that with respect to the obstacles created by imposition of restitution awards, Iowa law places limits on enforcement and collection of the fine and permits the court to structure a plan of restitution to help diminish the collateral consequences of a civil judgment. *See State v. Klawonn*, 609 N.W.2d 515, 518–19 (Iowa 2000). The best time to measure the impact of any restitution award on the ability of Richardson to earn a livelihood will be measured on her release when a court can examine the burdens of the restitution award and the ability of the recently released Richardson to generate income.

There is another type of challenge to the restitution award, however, not one based upon the consequences of an award on the offender's ability to earn a livelihood, but instead based on the gravity of the offense. *See id.* at 518. The focus is not on the impact of the amount

of the award, but instead on the nature of the underlying crime. Analysis of the gravity of the offense is a fact-specific inquiry. *Id.*

In my view, inquiry into the gravity of the offense includes consideration of criminal culpability. The relatively recent case of *Paroline v. United States,* tends to support the view that relative culpability is a factor in determining applicability of the Excessive Fines Clause. *See* 572 U.S. ___, ___, 134 S. Ct. 1710, 1727–28, 188 L. Ed. 2d 714, 734–35 (2014). Examination of relative culpability clearly allows an offender to offer evidence of reduced criminal culpability under the *Ragland–Null–Lyle* line of reasoning.

In this case, Richardson received a hearing. The question is, however, whether at the hearing the district court is required to consider evidence that her criminal culpability is reduced because of her age at the time of the crime and other related developmental issues. A reduction in the amount of the fine based on asserted lack of criminal culpability should not be determined at the time of release, when evidence will be hard to come by, but at the time of imposition of the restitution award.

I do not suggest the amount of restitution must be reduced in this case or in any other case, based on the lessened culpability of juvenile offenders. I do think, however, the fact that an offender was a juvenile must be considered in any punishment regime in which culpability is a factor.

Richardson's expert at the hearing presented twenty-one developmental factors that reduced Richardson's culpability in this matter. They included her age of fifteen at the time of the offense, the alcoholism and abandonment by her father, a learning disability, failure to bond with her mother, emotional and supervisory neglect, sexual

assault, alcohol and drug abuse, heavy substance abuse proximate to the offense, inadequate mental health interventions, peer harassment and bullying, and domination by the predatory codefendant in the crime. Based on my review of the record, it is unclear whether the district court understood that it was required to consider the evidence offered by Richardson or whether the district court in fact considered the evidence in making its restitution award. The district court cited the evidence, but the district court did not make specific findings.

Under the circumstances, I think the proper approach is to remand the case for further proceedings before the district court. On remand, the district court should expressly consider the *Miller* factors outlined in *Ragland, Null,* and *Lyle,* make appropriate factual findings, and set the amount of restitution award in this case.

I agree that any challenge to the $150,000 restitution award as excessive and in violation of the excessive fines clause of article I, section 17 of the Iowa Constitution is not ripe.

## II. Interpretation of Iowa Code Section 901.5(14).

I also respectfully dissent with respect to the majority's interpretation of Iowa Code section 901.5(14) (2014). I conclude the statute means what is says, namely, a district court may suspend any part of a sentence, including restitution, in whole or in part. Because the district court did not appear to be aware of that discretion, the case should be remanded to the district court for further consideration.

Iowa Code section 901.5(14) was enacted in part in response to our holdings with respect to mandatory minimum sentences for juvenile offenders.

I begin with the language of Iowa Code section 901.5(14). This Code provision states,

> Notwithstanding any provision in section 907.3 or any other provision of law prescribing a mandatory minimum sentence for the offense, if the defendant, other than a child being prosecuted as a youthful offender, is guilty of a public offense other than a class "A" felony, and was under the age of eighteen at the time the offense was committed, the court may suspend the sentence in whole or in part, including any mandatory minimum sentence, or with the consent of the defendant, defer judgment or sentence, and place the defendant on probation upon such conditions as the court may require.

Iowa Code § 901.5(14).  As is apparent, the statue provides the court "may suspend the sentence in whole or in part, including any mandatory minimum sentence."[12]  I draw two conclusions from the statutory language.

First, the legislature selected the term "sentence" in the statute. We have repeatedly held the term "sentence" includes restitution in a criminal case.  *See, e.g.*, *Izzolena*, 609 N.W.2d at 551 ("Restitution . . . is a part of the sentencing process."); *State v. Alspach*, 554 N.W.2d 882, 883 (Iowa 1996) (recognizing that "restitution is a phase of sentencing"); *see also* 4 Robert R. Rigg, *Iowa Practice Series*[TM]*, Criminal Law* § 33:5, at 905 (2016–2017 ed.) (characterizing restitution as "part of the sentence imposed" under our cases).  Others authorities have come to the same conclusion.  *See, e.g.*, *United States v. Simpson*, 885 F.2d 36, 38 (3d Cir. 1989) (holding sentences include all consequences of convictions); *United States v. Satterfield*, 743 F.2d 827, 837–38 (11th Cir. 1984) (stating that Congress intended restitution to be part of the criminal sentence to make the victim whole); 6 Wayne R. La Fave, et al., *Criminal Procedure*

---

[12]In *Lyle*, 854 N.W.2d at 404, we held that mandatory minimum sentences for youths could not be imposed without a hearing to consider the factors outlined in *Miller*, 567 U.S. ___, 132 S. Ct. 2455, 183 L. Ed 2d 407.  We have no occasion here to consider the extent to which Iowa Code section 901.5(14) complies with *Lyle* or any other authority.

§ 26.6(c), at 1068 (4th ed. 2015) ("[E]very jurisdiction provides for victim restitution to be included in a *criminal sentence.*" (Emphasis added.)); Keven Bennardo, *Restitution and the Excessive Fines Clause*, 77 La. L. Rev. 21, 21 (2016) ("Restitution is an important component of a criminal offender's *sentence.*" (Emphasis added.)); Cortney E. Lollar, *What is Criminal Restitution?*, 100 Iowa L. Rev. 93, 94 (Iowa 2014) ("Restitution imposed *as part of a criminal sentence* has become a core component of criminal punishment." (Emphasis added.)). If the legislature intended the statute to apply narrowly, it could have used narrow language. It did not.

As succinctly noted by an appellate court, the term "sentence" is not synonymous with the term "jail." *State v. Josephson*, 858 P.2d 825, 826 (Idaho Ct. App. 1993); *see also Smarr v. Pa. Bd. of Prob. & Parole*, 748 A.2d 799, 801 (Pa. Commw. Ct. 2000) (holding a sentence is not limited to period of incarceration), *disapproved of on other grounds by Martin v. Pa. Bd. of Prob. & Parole*, 840 A.2d 299, 308–09 (Pa. 2003). The terms "sentence" and "judgment" are generally synonymous. *See State v. Turbeville*, 686 P.2d 138, 146–47 (Kan. 1984); *accord People v. Adams*, 220 N.E.2d 17, 18 (Ill. App. Ct. 1962). A sentence is the judgment formally announced by the court after conviction imposing the punishment to be inflicted. *Klouda v. Sixth Judicial Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 261 (Iowa 2002). And, the judgment includes any order of restitution.

Second, under the statute, the district court may suspend any part of the sentence, "including any mandatory minimum sentence." Iowa Code § 901.5(14). The use of the term "including" demonstrates that the relief was not limited to mandatory minimum sentences. By using the term "including," the legislature contemplated the statute had a larger

reach than simply allowing the district court to suspend a mandatory minimum sentence. The logical conclusion is that it includes any part of the sentence, just as the language of the statute indicates.

I do not think the introductory and closing language of the statute changes the analysis. In the introductory "notwithstanding" phrase, the legislature makes clear that all mandatory minimums are affected by the statute. The closing language emphasizes the availability of a deferred judgment or probation. These phrases may have been added for emphasis, but they are not inconsistent with the notion that the district court may suspend any part of a sentence.

Based on my examination of the record, I conclude the district court did not realize that, *under the statute*, it had authority to consider "suspending" the total amount of restitution in its sentencing order based upon the youth of the offender. As a result, remand is required. *See State v. Ayers*, 590 N.W.2d 25, 32–33 (Iowa 1999).[13]

Wiggins and Hecht, JJ., join this dissent.

---

[13]The State has a brief heading indicating that Iowa Code section 901.5(14) is not retroactive and does not apply in this case. Aside from the heading, no argument is presented in its brief. We thus have no occasion to consider whether the statute is retroactive or prospective only. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 693 n.3 (Iowa 2006) (considering an issue waived when respondent raised an issue in an introductory heading, but made no argument nor cited authority in support of the issue); *accord State v. Vaughan*, 859 N.W.2d 492, 503 (Iowa 2015); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 434 (Iowa 2014).